WILLIAM J. BARRS ET AL. *v.* PETER ZUKOWSKI ET AL.

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued December 7, 1960—decided March 8, 1961

*Richard F. Corkey,* with whom, on the brief, was *Arthur Barrows,* for the appellants (plaintiffs).

*Joseph E. Moukawsher,* with whom, on the brief, was *Francis F. McGuire,* for the appellees (defendants).

SHEA, J. In this action, the plaintiffs sought an injunction to restrain the defendants from trespassing on the plaintiffs' land. They also asked for damages. The defendants, in their answer, denied that the plaintiffs were the owners and in possession of the land which was in dispute. The court rendered judgment for the defendants, and the plaintiffs have appealed.

The case arose out of a dispute over a boundary line. The finding, with certain corrections to which the plaintiffs are entitled, recites the following facts: In 1936, Arthur H. Keeney conveyed to Edna Copp lots 13, 14 and 15 as shown on a map entitled "Plan of Building Lots at 'Quaker Hill,' Waterford, Conn., etc." and filed for record July 19, 1901, in the Waterford land records. These three lots, as shown on the map, are situated on the north side of Mohegan Avenue Extension, a state highway also known as Scotch Cap Road, and are numbered in order from west to east, lot 15 being bounded on the east by Broad View Court, a street which intersects Mohegan Avenue Extension from the north. In 1932, before the three lots were conveyed from Keeney to Copp, the state of Connecticut had taken, for highway purposes, a portion of them which bordered on the north side of Mohegan Avenue Extension for about 105 feet. The portion taken was in the shape of a triangle with a base of about eight feet on Broad View Court and its apex at a point on the south line of lot 13 or 14. The description of the land in the deed from Keeney to Copp contained no reference to the piece taken

by the state for highway purposes. In September, 1941, Edna Copp conveyed to the plaintiffs, Mr. and Mrs. Barrs, the western part of her property, describing it by metes and bounds rather than by reference to specified lots in the Quaker Hill tract. With the exception of the west boundary line, where the distance in feet was fixed with exactitude, i.e., 113.6 feet, the distances on the boundary lines were modified by the words "more or less." The distance given along Mohegan Avenue Extension was sixty-four feet "more or less to land of one Pinch."

Meanwhile, in May, 1941, the defendants' predecessors in title, Charles S. Pinch and Alice T. Pinch, had acquired title to a portion of lots 14 and 15 as shown on the map. The description of the land in their deed, as well as in the deed from Copp to their grantor, fixed the point of beginning "at the intersection of the northeasterly side of Mohegan Avenue [Extension] *as now established,* with the westerly side of . . . [Broad View] Court" (italics supplied). The distances given in these deeds were exact measurements on all four sides of the property, including a frontage of ninety-three feet on Mohegan Avenue Extension "as now established."

The plaintiffs' property was bounded on the east in part by the Pinch land and in part by land of one Dhiel lying to the north of the Pinch property and consisting of the north part of lot 15 and the northeast part of lot 14. In 1942, the plaintiffs and Dhiel erected a retaining and division wall along what the plaintiffs considered to be a part of the east boundary line of their property and the west boundary line of the Dhiel property. Dhiel then erected a picket fence along the wall and extended it southerly to a point where he planted a hedge, which continued southerly to the southwest

corner of his land. The line formed by the wall, fence and hedge was straight, and its prolongation southerly in the same course ran just west of some bushes planted on the Pinch property. In January, 1942, the plaintiffs moved into a house which they built on their land. They have lived there since that time. There was nothing to mark the boundary between the plaintiffs' land and the Pinch land. This area was planted with lawn grass. These conditions continued until March, 1957. Mrs. Pinch was a sister of Mrs. Barrs. No question was ever raised concerning their mutual boundary line. From 1942 to March, 1957, the plaintiffs or their son mowed the grass as far east as the bushes planted by Pinch. In other ways, the plaintiffs also exercised dominion and control over the land to the west of these bushes. The plaintiffs were in uninterrupted possession of the land described in their deed from September 26, 1941, to March, 1957.

In August, 1956, the defendants caused a survey to be made of their property. On one occasion, while the surveyor was on the property, he told the named plaintiff that he was making a survey for the defendants. The surveyor placed two stakes on what he set out as the plaintiffs' east boundary, and the defendants later stretched a string between the stakes. This string was laid in the grass and driven into the ground with clothespins. The defendants did not tell the plaintiffs that the stakes or string marked the boundary line or that they were claiming ownership up to the string line. In March, 1957, the defendants erected a wire fence on their side of the string line. In August, 1957, the plaintiffs engaged a surveyor, who claimed that the fence erected by the defendants was five feet six inches west of the plaintiffs' eastern boundary line. The plaintiffs'

surveyor established the boundary line by referring to the map of Quaker Hill filed in the land records in 1901. In making his field survey, he used, as a starting point, the junction of stone walls at the northwest corner of the 1901 plan, a considerable distance from the line in dispute. From this starting point, he attempted to establish the intersection of the northerly line of Mohegan Avenue Extension and the westerly line of Broad View Court. He used, as monuments, the stone walls which were still in existence. His location of the southwest corner of the plaintiffs' land coincided with a state highway department merestone located at the southwest corner of the land of Arthur H. Keeney after the state had taken a portion of lots 13, 14 and 15 for highway purposes in 1932. The plaintiffs' surveyor claimed that the point marking the original intersection of the westerly line of Broad View Court with Mohegan Avenue Extension was within what is now the surfaced portion of Mohegan Avenue Extension.

There was no marker or merestone to indicate the point where the northerly line of Mohegan Avenue Extension and the westerly line of Broad View Court intersected. The northerly line of Mohegan Avenue Extension, as originally laid out on the map of Quaker Hill in 1901, was not straight. The land taken by the state altered the southerly lines of lots 14 and 15 and possibly that of lot 13 as well. From the southwest corner of lot 13, the northerly boundary of Mohegan Avenue Extension runs easterly in a straight line for some distance and then bears slightly northward and continues easterly on the new course, in a straight line, to the westerly line of Broad View Court, which, on the taking map, was shown to be only forty feet wide. Broad

View Court is actually fifty feet wide. The taking of the land by the state shortened the distance between the southwest corner of lot 13 and the southeast corner of lot 15. The intersection of the northerly line of Mohegan Avenue Extension and the westerly line of Broad View Court was not established by the evidence. The plaintiffs' surveyor made no adjustment in his field work for the effect on the properties in question of the taking for the highway. He claimed that any difference in the quantity of land before and after the taking was so slight as to be immaterial. He made no map of the area and presented no plan to the court to substantiate the claim that the defendants had encroached upon the plaintiffs' land. The plaintiffs' deed contains no references to any physical object or monument. The defendants' surveyor testified that the fence erected by the defendants was on the division line as shown on a map made by him and admitted into evidence and, further, that the fence was in a straight line with the old hedge and fence on the boundary line between the Barrs property and the Dhiel property. The deed to the Pinches, the defendants' predecessors in title, showed that the land taken by the state was considered when the description was prepared. The defendants made no claim of title by adverse possession. The court viewed the premises.

In their complaint, the plaintiffs alleged that they were the owners and in possession of the land in dispute. Where damages for trespass and an injunction against further trespasses are sought, if both title and possession are alleged and the answer is a general denial, as in the instant case, both title and possession are put in issue. *Barca* v. *Mongillo*, 133 Conn. 374, 376, 51 A.2d 598. Title is an essential

element in a plaintiff's case, where an injunction is sought to restrain a trespass. *McNamara* v. *Watertown,* 100 Conn. 575, 579, 124 A. 244. The burden is on the plaintiff to locate the boundary line. *Simmons* v. *Addis,* 141 Conn. 738, 741, 110 A.2d 457. In the instant case, the plaintiffs are unable to fix the location of the boundary line with any degree of certainty. Their surveyor presented no plan to show the basis of their claim of encroachment by the defendants. He failed to take into account the land which had been taken by the state for highway purposes, claiming that the taking by the state did not make any material change in the quantity of the land adjoining the highway, that is, Mohegan Avenue Extension. This taking, however, affected the measurements of the property along the highway line. The description of the land in the plaintiffs' deed did not tie the measurement along Mohegan Avenue Extension to any particular physical object so that the line could be definitely located. The distance on this line is given as "more or less" and runs to the Pinch property. While adjoining land may serve as a monument, it does not assist in fixing the boundary when the boundary of the adjoining land itself is uncertain. *Patzloff* v. *Kasperovich,* 116 Conn. 440, 442, 165 A. 349. The failure to locate the intersection of the westerly line of Broad View Court and the northerly line of Mohegan Avenue Extension made it difficult, if not impossible, to fix the boundary line by the description given in the plaintiffs' deed.

The plaintiffs claim that they have established title to the land in dispute by adverse possession. Here again, the burden of proof is upon them. *Loewenberg* v. *Wallace,* 147 Conn. 689, 699, 166 A.2d 150. Adverse possession is made out only by clear

and positive proof. *Bridgeport Hydraulic Co.* v. *Sciortino,* 138 Conn. 690, 694, 88 A.2d 379; *Huntington* v. *Whaley,* 29 Conn. 391, 398. The essential elements of an adverse possession sufficient to create title to the land in the claimant are that the owner shall be ousted of possession and kept out uninterruptedly, for a period of fifteen years, by an open, visible and exclusive possession by the claimant, without the license or consent of the owner. *Bridgeport Hydraulic Co.* v. *Sciortino,* supra, 695; *Palmieri* v. *Bulkley,* 137 Conn. 40, 42, 74 A.2d 475; *Pepe* v. *Aceto,* 119 Conn. 282, 287, 175 A. 775. In the final analysis, whether possession is adverse is a question of fact for the trier. *Padula* v. *Padula,* 138 Conn. 102, 110, 82 A.2d 362; *Shea* v. *Gavitt,* 89 Conn. 359, 363, 94 A. 360.

In the light of the facts recited above, including the relationship between the Barrs and the Pinches and the absence of any dispute between them as to their mutual boundary line, it is unlikely that the use made of the disputed land by the plaintiffs could be considered as open, visible and exclusive and as constituting an ouster of the owners. The court did not err in holding that the plaintiffs did not acquire title to the disputed land by adverse possession. It is true, as the plaintiffs claim, that the court found that they had been in uninterrupted possession of the property described in their deed for more than fifteen years. We do not, however, attach to this statement the significance they do. In the first place, the inability to locate the proper boundary lines of their property deprives this finding of persuasive force. Secondly, uninterrupted possession, in and of itself, without the other essentials of adverse possession, does not bring about any change in the ownership of the land. *Bridgeport Hydraulic Co.* v.

*Sciortino,* supra.  The plaintiffs failed to prove that they had title to or possession of the land in dispute. The court did not err in rendering judgment for the defendants.

There is no error.

In this opinion the other judges concurred.