**TOWN OF WEST HARTFORD, et al.,**

v.

**OPERATION RESCUE, et al.**

**No. 2:89 CV 400 (PCD).**

United States District Court,
D. Connecticut.

May 12, 1992.

Pamela R. Hershinson, West Hartford, Conn., and Jon L. Schoenhorn, Hartford, Conn., for plaintiffs.

Vincent P. McCarthy, New Milford, Conn., for defendants.

## RULING ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

DORSEY, District Judge.

This case arises out of protests on June 17 and June 26, 1989 at the Summit Women's Center ("Center") in West Hartford. Plaintiff, the Center, and defendants, who include Operation Rescue and several of its supporters ("Operation Rescue"), each move for summary judgment.

*Background*

The following facts are undisputed for purposes of these cross-motions. As a result of the two demonstrations staged by defendants protesting abortions performed at the Center, the Town of West Hartford ("Town") filed the original complaint alleging, *inter alia*, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, as well as myriad state law claims and seeking declaratory relief. The undisputed facts underlying that complaint are detailed fully in this court's ruling on plaintiff's motion for preliminary injunction dated September 21, 1989, familiarity with which is assumed. A temporary restraining order was granted on June 26, 1989, extended on July 13, 1989. The Center became an intervening plaintiff on August 28, 1989 and filed an amended complaint on September 22, 1989. A preliminary injunction based upon the Town's public nuisance claim was granted after a three-day hearing on September 21, 1989. *Town of West Hartford v. Operation Rescue*, 726 F.Supp. 371 (D.Conn. 1989). The court of appeals reversed for

lack of federal jurisdiction with respect to the Town and ordered all of the Town's claims dismissed, addressing neither the jurisdictional basis nor the merits of claims set forth by the Center, the sole remaining plaintiff, 915 F.2d 92. Plaintiff now asserts, on its own behalf, a conspiracy by defendants to deprive women of their constitutional rights, both to seek an abortion and to travel, in violation of 42 U.S.C. § 1985 (Count I); violation of RICO (Count III); as well as state claims of trespass (Count VI), tortious interference with business (Count VIII), and negligence (Count IX). Defendants argue that this court continues to lack subject-matter jurisdiction and that plaintiff has failed, as a matter of law, to set forth any legal or factual basis to support its federal claims.[1]

*Discussion*

Motions for summary judgment involve a determination as to whether there exists any genuine issue of material fact. That standard is articulated more fully in *Cote v. Durham Life Ins. Co.*, 754 F.Supp. 18 (D.Conn.1991).

### A. *42 U.S.C. § 1985(3) (Count I)*

■ Plaintiff asserts that defendants have conspired to deprive women of their constitutional right to privacy by interfering with their right to choose, seek, and obtain abortions. Title 42 U.S.C. § 1985(3) provides, in pertinent part:

If two or more persons in any State or Territory conspire, ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State

or Territory the equal protection of the laws; ... [i]n any case of conspiracy set forth in this section, if one or more person engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

Thus, a claim under § 1985(3) requires (1) a conspiracy; (2) for the purpose of depriving a person or class of persons of equal protection of the laws or the equal privileges and immunities under the law; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States. *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 587 (2d Cir.1988). The statute provides no substantive rights, but "[p]rovides a remedy for a violation of the rights it designates." *Id.*, quoting *Great American Federal Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). Section 1985(3) clearly provides a remedy for conspiracies to deprive persons of their rights under the United States Constitution. *See, e.g., United Bd. of Carpenters v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Defendants maintain that plaintiff's allegation of the deprivation of the right to abortion is not actionable under § 1985, as its underlying constitutional claim—violation of the fourteenth amendment—necessitates a concomitant level of state action which plaintiff has failed to allege.[2]

1. In light of defendants' withdrawal of their fifth amendment prerogative, plaintiff's references to defendants' invocation of the fifth amendment and the negative inferences that may be drawn therefrom are disregarded for purposes of these motions.

2. Defendants' memorandum, which serves both as an opposition to plaintiff's motion for summary judgment and as a memorandum accom-

panying defendants' motion for summary judgment, addresses solely the questions of whether the right to abortion is encompassed by § 1985(3) and whether this case involves the manner of class-based animus anticipated by the statute. In consequence, although plaintiff's memorandum fully discusses each element of § 1985(3) with respect to the constitutional right to abortion, for the purposes of these cross-motions defendants have disputed neither

Defendants' argument rests on the premise that, because § 1985 confers no substantive rights but affords a remedy for the deprivation of a constitutional right, the "[r]ights, privileges and immunities that § 1985 vindicates must be found elsewhere." *Scott,* 463 U.S. at 833, 103 S.Ct. at 3358. While § 1985(3) makes no reference to state action and has thus been found to reach wholly private conspiracies, *see Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the necessity for state action depends on whether the underlying substantive right can only be asserted against state interference. *See New York State NOW v. Terry,* 704 F.Supp. 1247 (S.D.N.Y.), *aff'd as modified,* 886 F.2d 1339 (2d Cir.1989), *cert. denied,* 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). Whether a conspiracy to deprive women of the right to an abortion can be alleged against purely private parties under § 1985(3) is thus dependent upon the constitutional source of that right.

Given the controversial nature of the right in question and its contentious legal and political history, it will come as no surprise to learn that there exists neither uniformity of opinion nor jurisprudential consistency regarding the foundation or derivation of the right to choose abortion in the federal Constitution. In *Roe v. Wade,* 410 U.S. 113, 152, 93 S.Ct. 705, 725, 35 L.Ed.2d 147 (1972), the Supreme Court located the right as subsumed by the right to privacy, finding its roots in the first, fourth, fifth, ninth, and fourteenth amendments, as well as in the penumbras of the Bill of Rights. It was noted, however, that the right to privacy, "[w]hether it be founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action, as we feel it is, or . . . in the Ninth Amendment's reservation of rights to the people, is broad enough to encompass a woman's decision whether or not to terminate her pregnancy." *Id.* at 153, 93 S.Ct. at 727. The subsequent decisional law has overwhelmingly situated the right

to privacy within the fourteenth amendment, as suggested but never conclusively established by the Court in *Roe,* thereby affirming the existence of a right that cannot be abrogated by state interference. *See, e.g., Hodgson v. Minnesota,* 497 U.S. 417, 110 S.Ct. 2926, 2936, 111 L.Ed.2d 344 (1990) ("A woman's decision to beget or to bear a child is a component of her liberty that is protected by the Due Process Clause of the Fourteenth Amendment to the Constitution."); *Webster v. Reproductive Health Serv.,* 492 U.S. 490, 521, 109 S.Ct. 3040, 3058, 106 L.Ed.2d 410 (1989) ("This case therefore affords us no occasion to revisit the holding of *Roe,* which was that the Texas statute unconstitutionally infringed the right to an abortion derived from the Due Process Clause."); *Akron v. Akron Center for Reproductive Health,* 462 U.S. 416, 427, 103 S.Ct. 2481, 2491, 76 L.Ed.2d 687 (1983) ("In *Roe v. Wade,* the Court held that the 'right of privacy, . . . founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action, . . . is broad enough to encompass a woman's decision whether or not to terminate her pregnancy.' 410 U.S. at 153, 93 S.Ct. at 727. Although the Constitution does not specifically identify this right, the history of this Court's constitutional adjudication leaves no doubt that 'the full scope of the liberty guaranteed by the Due Process Clause cannot be found in or limited by the precise terms of the specific guarantees elsewhere provided in the Constitution.' "); *Harris v. McRae,* 448 U.S. 297, 312, 100 S.Ct. 2671, 2685, 65 L.Ed.2d 784 (1980) ("The constitutional underpinning of *Wade* was a recognition that the 'liberty' protected by the Due Process Clause of the Fourteenth Amendment includes not only the freedoms explicitly mentioned in the Bill of Rights, but also a freedom of personal choice in certain matters of marriage and family life."); *Maher v. Roe,* 432 U.S. 464, 476, 97 S.Ct. 2376, 2383, 53 L.Ed.2d 484 (1977) ("This distinction [between direct

the existence of a conspiracy nor the commission of an overt act in furtherance thereof. Rather, while plaintiff addresses at length the issues of standing and whether women constitute a class for purposes of § 1985(3), defendants' failure to discuss these issues prompts the conclusion that defendants do not dispute these matters and they are not considered herein.

state interference with a protected activity and state encouragement of an alternative activity] is implicit in ... cases cited in *Roe* in support of the pregnant woman's right under the Fourteenth Amendment."). It is, therefore, reasonable to conclude that the greater body of case law interpreting the constitutional source from which the right to abortion springs locates that right firmly in the fourteenth amendment. *But see Lewis v. Pearson Foundation, Inc.*, 908 F.2d 318 (8th Cir.1990), *petition for cert. filed*, 59 U.S.L.W. 3726 (U.S. Apr. 10, 1991) (No. 90–1575) ("[W]e observe that *Roe v. Wade* finds support for the existence of personal privacy interests and freedom of personal choice in marriage and family life in the first, fourth, fifth and ninth amendments, as well as in the fourteenth. By their nature, these interests would be meaningless were they to be protected only from interference by the state. We therefore hold that 42 U.S.C. § 1985(3) does not contain a state action requirement where, as here, a plaintiff's claim finds its course in the right announced in *Roe v. Wade*.").

■ Defendants next argue that plaintiff has failed to allege state action to deprive women of their right to abortion, an essential component of a fourteenth amendment cause of action. Plaintiff suggests that § 1985(3) compels a measure of state involvement that does not rise to the level of the technical "state action" requirement necessitated by, for instance, 42 U.S.C. § 1983. Again, while there is no apparent consensus regarding the amount of state action mandated by § 1985(3), the Supreme Court has thus far indicated that a clear distinction exists between "state action," as that phrase is understood in the bulk of constitutional jurisprudence, and "state involvement" in private conspiracies pursuant to § 1985(3). *See, e.g., Scott*, 463 U.S. at 833, 103 S.Ct. at 3358 ("The rights, privileges, and immunities that § 1985(3) vindicates must be found elsewhere, and here the right claimed to have been infringed has its source in the First Amendment. Because that Amendment restrains only official conduct, to make out their § 1985(3) case, it was necessary for respondents to prove that the State was somehow involved in or affected by the conspiracy."). Moreover, "[i]f private persons take conspiratorial action that prevents or hinders the constituted authorities of any State from giving or securing equal treatment, the private persons would cause those authorities to violate the Fourteenth Amendment; the private persons would then have violated § 1985(3)." *Great Am. Federal S. & L. Ass'n v. Novotny*, 442 U.S. 366, 384, 99 S.Ct. 2345, 2355, 60 L.Ed.2d 957 (1978).[3] Here, plaintiff has demonstrated that defendants engaged in a deliberate course of conduct designed to frustrate the ability of local law enforcement to provide equal access to medical services to women who choose to exercise the right to an abortion. Defendants do not dispute in their memoranda that they blocked access to the clinic (Defendants' Statement of Material Facts ¶¶ 6–12); that they refused to leave despite

---

3. Defendants' citation to case law purportedly supporting the proposition that there is no basis for a "right to abortion" claim under § 1985(3) for lack of state involvement is deceptive and inaccurate. In every case but one, the district court either chose not to reach the issue of state involvement and decided that matter on alternate grounds or found virtually no allegations of state involvement. *See, e.g., New York State NOW v. Terry*, 886 F.2d at 1361 ("[H]aving already found the interference with the right to travel an independent constitutional ground upon which to affirm the district court's § 1985(3) holding, it is unnecessary to rule on [the right to obtain an abortion] claim."); *Portland Feminist Women's Health Center v. Advocates for Life, Inc.*, 681 F.Supp. 688 (D.Or.1988) (There is no allegation of state action in plaintiffs' complaint; no facts from which state action can be inferred; no assertion by plaintiffs that state action is in any way involved."); *NOW v. Operation Rescue*, 726 F.Supp. 1483, 1494 (E.D.Va.1989), *cert. denied sub nom., Bray v. Alexandria Women's Health Clinic*, —— U.S. ——, 111 S.Ct. 1070, 112 L.Ed.2d 1176 (1991) ("[G]iven that there is another independent basis for relief under Section 1985(3), the Court concludes that it is unnecessary and imprudent to venture into this thicket. Courts should avoid constitutional questions where other grounds are available and dispositive of the issues presented."); Only in *Roe v. Operation Rescue*, 710 F.Supp. 577 (E.D.Pa.1989), *aff'd*, 919 F.2d 857 (3d Cir.1990), did the district court find that defendants' protest activities did not satisfy the state involvement requirement, although the court declined to discuss what activities might fulfill this specification.

having been asked to do so by plaintiff's employees (¶ 7); that they refused to notify police of the date of their demonstrations (¶ 5); that they went "limp" when arrests were attempted (¶ 10); that many of them failed to identify themselves to police (¶ 11); and that all patients were denied treatment at plaintiff's facility on June 17, 1989, the date of the second protest (¶ 19). Defendants' efforts clearly prevented and hindered the state from providing and assuring equal access to all members of the public to select and receive abortions, a constitutionally protected and preserved right. Defendants intentionally frustrated the authorities in their ability and obligation to ensure the women's constitutional rights. Defendants thus caused the violation of the fourteenth amendment by obstructing and preventing the authorities from enforcing women's rights. Plaintiff has shown ample involvement by the state, even if the result was not the state's intention, in accordance with the Supreme Court's articulation of that principle in both *Novotny* and *Scott.* The right to obtain an abortion is thus not only actionable under § 1985(3), but defendants here have violated that right by the intended effect of their actions on the state, i.e., the denial of women's constitutional right.

■ Defendants propose, in the alternative, that § 1985(3) provides a remedy solely for the violation of fundamental rights and that abortion is merely a "liberty interest." Little time need be dedicated to defendants' thoroughly tendentious arguments in this regard.[4] *Roe v. Wade* explicitly established that the right to abortion is not only "fundamental," but is "implicit in the concept of ordered liberty." 410 U.S. at 152, 93 S.Ct. at 726. The Court has gone on to affirm this principle in various contexts. *See, e.g., Thornburgh v. American College of Obst. & Gyn.,* 476 U.S. 747, 781,

n. 11, 106 S.Ct. 2169, 2189, n. 11, 90 L.Ed.2d 779 (1986) ("[T]hese cases deal] with the individual's right to make certain unusually important decisions that will affect his own, or his family's, destiny. The Court has referred to such decisions as implicating 'basic values,' as being 'fundamental' and as being dignified by history and tradition."); *Akron,* 462 U.S. at 427, 103 S.Ct. at 2491 ("[T]he Court in *Roe* acknowledged that the woman's fundamental right 'is not unqualified and must be considered against important state interests in abortion.... But restrictive state regulation of the right to choose abortion, as with other fundamental rights subject to searching judicial examination, must be supported by a compelling state interest."). Moreover, in *Webster,* 492 U.S. at 520, 109 S.Ct. at 3058, the Court declared that "[t]here is wisdom in not unnecessarily attempting to elaborate the abstract differences" between fundamental rights and liberty interests. While it is difficult to dispute that Supreme Court jurisprudence confronting the abortion question has undergone an evolution permitting successively greater restrictions on the right to choose, *Roe v. Wade* is still the law of the land and the legal framework and precepts expressed therein have not been overruled to date. Thus, this court will adhere to the principles formulated in that case resolutely establishing the right to abortion, whatever its genesis, as a fundamental right guaranteed by the Constitution. It is unquestionable that § 1985(3) provides a remedy for the violation of constitutional rights. The right to an abortion, again, surely falls squarely within this category and is thus actionable under the statute.

■ Defendants further submit that a conspiracy to deter women from having abortions does not involve the kind of class-based animus required by § 1985(3).[5] In

---

**4.** Defendants' truly presumptuous assertions that the Supreme Court has now "properly determined" that the right to abortion is a mere liberty interest and that the right has been "demoted" from its former status, coupled with their continuing citation to dissenting opinions by justices who "are now in the majority" is not only not appreciated, but it is unsound legal hypothesizing and falsely states existing law.

**5.** Defendants' use of the word "amicus" where the word "animus" properly belongs suggests that counsel would do well to look up these words in the dictionary. Moreover, defendants' indifference in failing to brief the issue of class-based animus under § 1985(3), instead referring the court to an attached amicus brief of the United States in a different case without so

support of this contention, defendants maintain that their intent is to prevent abortions,[6] not to discriminate against women, and further that the presence of women defendants precludes a finding of class-based animus. Plaintiff argues that defendants' "real" target, preventing abortion, ignores the fact that only women seek abortions and that defendants thus would deprive women of a constitutionally protected right.

A primary purpose of § 1985(3) is not simply to accord an intangible, abstract protection to the targeted class, but to ensure members of the class the meaningful exercise of their individual rights. *Volunteer Medical Clinic v. Operation Rescue*, 948 F.2d 218, 225 (6th Cir.1991). "By its very language § 1985(3) is necessarily tied to evolving notions of equality and citizenship. As conspiracies directed against women are inherently invidious and repugnant to the notion of equality of rights for all citizens, they are therefore encompassed under the Act." *New York State Now v. Terry*, 886 F.2d at 1359. *See also Cousins v. Terry*, 721 F.Supp. 426, 430 (N.D.N.Y.1989) ("[W]omen seeking abortions constitute a class entitled to protection under § 1985(3), and ... a conspiracy to deprive women seeking abortions of the equal protection of the laws and the equal privileges and immunities of national citizenship is actionable under § 1985(3).").

Defendants' argument that their actions are directed against an activity, or only a "subgroup" of women rather than women in general, is insufficient to escape the scope of § 1985(3).... It is sophistry for defendants to claim a lack of class-based animus because their actions are directed only against those members of a class who choose to exercise particular rights, but not against class members whose actions do not offend them.

*New York State NOW v. Terry*, 886 F.2d at 1361. It is equal sophistry for defendants to assert either that they seek to deter all "people" who receive abortions, whether or not they are women, or that they cannot possess an invidious class-based animus against women due to the fact that some of the defendants are women. Any attempt to prevent the exercise of this constitutionally protected right is by definition an attempt to deprive women—and only women—of that right. *See New York State NOW v. Terry*, 961 F.2d 390, 395 (2d Cir.1992) ("These issues [including whether actions directed at the prevention of abortions did not amount to the class-based animus required for a violation of § 1985(3)] are therefore settled in this circuit, absent reconsideration en banc or a different ruling by the Supreme Court."). Moreover, defendants fail to explicate, nor does their "amicus brief," their conclusory assertion that women can never act in a discriminatory manner toward other women. Absent any such discussion, beyond the bald assertion, there is no reason to credit defendants' assumption. The presence of women as defendants in this case does not preclude the conclusion, otherwise uncontroverted in the record, that defendants conspired to deprive women, as a class, of their constitutional right to abortion in contravention of § 1985(3). Accordingly, plaintiff's motion for summary judgment on Count I is granted.[7]

---

much as identifying a page number on which the referenced argument can be found, with no request for permission to file an amicus brief, prompts the disregard of the issue as not properly briefed. The court takes extremely seriously its role in adjudicating a dispute such as this and consequently expends a tremendous amount of time in the process. It is simply beyond belief that defendants would not have felt it to be worth the effort to write a few lines on this matter rather than borrow another's work. If counsel cannot sense or comprehend the obligation to aid the court in its search for the applicable law, one would think the client deserved the most thorough and effective presentation achieved by following the rules.

6. Specifically, defendants declare that their purpose was "the goal of rescuing babies who were scheduled to be killed." Defendants' Statement of Material Facts, ¶ 4.

7. Count I asserts a claim under § 1985(3) alleging the underlying constitutional deprivation of the right to abortion and the right to travel. Having found interference with the constitutional right to abortion, an independent constitutional ground upon which to grant summary judgment on Count I, it is unnecessary to ad-

### B. *18 U.S.C. § 1961, RICO (Count III)*

Plaintiff's other federal claim is asserted pursuant to 18 U.S.C. §§ 1961–1968, RICO, which directs plaintiff to satisfy two pleading burdens. "First, plaintiff must assert that the defendant has violated 18 U.S.C. § 1962 (1988), the substantive RICO statute." *Town of West Hartford v. Operation Rescue*, 915 F.2d 92, 100 (2d Cir.1990). This requires:

> (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate commerce.

*Id.*, quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). Plaintiff must further allege that he was injured in his business or property by reason of a violation of § 1962. *See id.* Here, plaintiff alleges that defendants, acting as an enterprise, through their pattern of demonstrations, sought to obtain the termination of the Center's performance of abortions, a form of extortion as defined by the Hobbs Act, 18 U.S.C. § 1951(b)(2).[8] Defendants respond that plaintiff has failed to demonstrate that defendants constitute an "enterprise affecting interstate commerce" within the RICO statute; that defendants committed any acts of extortion as defined by the Hobbs Act; or that plaintiff was injured in its business or property due to defendants' alleged extortion.[9]

 Defendants contend that they do not constitute an enterprise and that their activities do not constitute RICO offenses, largely on the grounds that they neither exist for nor are engaged in profit making. The Second Circuit, considering these issues in tandem in the context of criminal RICO convictions, has found that there must be some financial purpose to either the enterprise or to the acts of racketeering. *See United States v. Ferguson*, 758 F.2d 843 (2d Cir.), *cert. denied*, 474 U.S. 841, 106 S.Ct. 124, 125, 88 L.Ed.2d 102 (1985); *United States v. Bagaric*, 706 F.2d 42 (2d Cir.), *cert. denied*, 464 U.S. 840, 104 S.Ct. 133, 134, 78 L.Ed.2d 128 (1983); *United States v. Ivic*, 700 F.2d 51 (2d Cir.1983). This economic component, moreover, need not be significant or primary. *See Ferguson*, 758 F.2d 843. Plaintiff argues that defendants have an economic motive—as distinguished from a profit-making motive—in their actions. Plaintiff points to the fact that defendants, both individually and collectively, raise funds to carry on their cause and support their organizations. Plaintiff further notes that defendants seek to extort from and deny to the Center an economic benefit or opportunity—that is, to force plaintiff, through obstruction, intimidation, and fear, to shut down. While plaintiff has clearly demonstrated that it has suffered economic consequences due to defendants' actions, this is not the type of financial loss that the Second Circuit has construed the RICO statute to require. Defendants may seek and receive donations from supporters, perhaps even in direct response to defendants' strategies and tactics such as those employed with respect to plaintiff, but their clearly expressed purpose is to stop the performance of abortions, not to make money. Nor does the record indicate that they seek the termination of plaintiff's business for an economic goal; rather, their overarching motivation has been to stop plaintiff from performing abortions. Plaintiff's citation to *Northeast Women's Center, Inc. v. McMonagle*, 868 F.2d 1342 (3d Cir.), *cert. denied*, 493 U.S. 901, 110 S.Ct. 261, 107 L.Ed.2d 210 (1989), provides a novel contrast to the

---

dress the arguments regarding the right to travel. *See NOW v. Operation Rescue*, 726 F.Supp. 1483; *New York State NOW v. Terry*, 886 F.2d 1339.

**8.** Extortion, as defined by the Hobbs Act, "[m]eans the obtaining of property from another, with his consent, inducted by wrongful use of actual or threatened force, violence, or fear, or under color of official right." *18 U.S.C.* § 1951(b)(2).

**9.** Defendants have ·not discussed the alleged "commission of two or more acts" constituting a "pattern" in their opposition to the RICO claim. As neither argued nor briefed, defendants are held not to have disputed that their activities constituted a "pattern."

interpretive boundaries placed on RICO in this circuit.[10] However, this court is bound by the narrower construction of RICO suggested by the approach adopted by the Second Circuit when confronted with the criminal RICO statute. Accordingly, because plaintiff has not established that the purpose of defendants' activities was sufficiently economic in nature, defendants' motion for summary judgment on Count III is granted.

### C. *Trespass (Count VI)*

■ Count VI alleges defendants' trespass upon the Center's property by force during the demonstrations in question. To state a claim for trespass under Connecticut law, plaintiff "[m]ust prove possession, title and the absence of actual exclusive possession by another." *Lake Garda Improvement Ass'n v. Battistoni,* 160 Conn. 503, 517, 280 A.2d 877 (1971). *See also Barrs v. Zukowski,* 148 Conn. 158, 165, 169 A.2d 23 (1961) ("Title is an essential element in plaintiff's case, where an injunction is sought to restrain a trespass."). Here, plaintiff seeks an injunction to prevent defendants' continuing trespass upon the Center's premises. Plaintiff neither alleges nor demonstrates that it holds title to the grounds in question and thus fails, as a matter of law, to establish a claim for trespass. Defendants' motion for summary judgment on Count VI is granted.

### D. *Tortious Interference With Business (Count VII)*

■ Count VII alleges the tortious interference with plaintiff's business expectations by defendants. Defendants maintain that plaintiff has failed to show a causal nexus between the claimed tortious behavior and any losses to plaintiff and has also failed to establish or allege any actual losses of anticipated profits. In order to succeed on a claim of tortious interference with business expectancies under Connecticut law, plaintiff must not only show that defendants' actions proximately caused a

loss to plaintiff's business, but also that defendants were guilty of fraud, misrepresentation, intimidation, or molestation. *Sportsmen's Boating Corp. v. Hensley,* 192 Conn. 747, 754, 474 A.2d 780 (1984). In addition, the tort of interference is not complete absent some actual damage. *Bowman v. Grolsche Bierbrouwerij B.V.,* 474 F.Supp. 725 (D.Conn.1979). Here, plaintiff has established, without contradiction, that defendants, through intimidation, sought to interfere with plaintiff's business of providing medical care and abortion services to patients. Plaintiff's offices were closed for several days due to defendants' actions. Plaintiff sustained property damage and thus damage to its business, when defendants entered its premises. Accordingly, plaintiff's motion for summary judgment on Count VII is granted.

### E. *Negligence (Count VIII)*

In Count IX a claim of negligence is alleged. Plaintiff states that its negligence claim is an alternative theory of liability should defendants be found not to have acted intentionally or willfully. Because defendants are found to have acted intentionally with respect to several counts of the complaint, Count VIII is, accordingly, dismissed.

### F. *Permanent Injunction*

■ In order to obtain a permanent injunction, "a party must show the absence of an adequate remedy at law and irreparable harm if the relief is not granted." *New York State NOW v. Terry,* 886 F.2d at 1362, citing *Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 57, 95 S.Ct. 2069, 2075, 45 L.Ed.2d 12 (1975). As found previously in its ruling on motion for preliminary injunction, dated July 22, 1991, the ability of plaintiff to continue to render services to women is compromised by defendants' conduct, particularly in view of the fact that defendants, when asked, have uniformly refused to disavow repetition of the activi-

---

**10.** In *McMonagle,* the Third Circuit found that anti-abortion activists' efforts to shut down a clinic in which abortions were performed constituted an attempt to extort from the clinic its

right to continue operating its business through methods of fear, intimidation, and coercion. 868 F.2d at 1342.

**170**

ties of April 1, 1989 and June 17, 1989. Irreparable harm will, therefore, result if the injunction already in place is not continued and enforced.

 Further, money damages will not safeguard women's access to the Center's services; only injunctive relief can assure such access. Moreover, the narrowly-tailored, content-neutral nature of the injunction sought by plaintiff does not infringe defendants' exercise of their first amendment right. *See New York State NOW v. Terry,* 886 F.2d 1339.

Accordingly, it is ordered that defendants Operation Rescue, Joseph Scheidler, Randall A. Terry, Project Life, Inc., Connecticut Pro–Life Action Network, John Kladde, John Charles Grant, Eileen M. Haggerty, Jean Pollock, Catherine Jersey, Lillian A. Loughlin, William Calvin, William P. Cotter, Hjalmar Syverson, Dolores M. Teleski, Jayne C. Tuller, John Doe(s) and Jane Doe(s), Massachusetts Pro Life Action Network, Bi–State Operation Rescue Network, John Kenshaw, Thomas J. Herlihy, Robert E. Cooley and Lawrence Dolan shall not, unless excused by further order of this court, enter or remain upon or in the property or offices of Summit Women's Center; Physically block, obstruct, or otherwise impede access, either by ingress or egress, to the property or offices of the Summit Women's Center, either by themselves, individually, or in conjunction with others; or directly aid, abet, counsel, procure, arrange, encourage, or assist any other person to perform the actions above set forth.

This order shall be binding only upon the above-named defendants and their officers, agents, servants, employees and attorneys, and upon those persons in active concert or participation with them, or any one or more of them who receive actual notice of this order by personal service or otherwise. This injunction shall also be applicable to any address to which the Summit Women's Center should relocate in the future.

*Conclusion*

For the foregoing reasons, plaintiff's motion for summary judgment (document # 341) is granted as to Counts I and VII. Defendants' motion for summary judgment (document # 358) is granted as to Counts III and VI. Count VIII is dismissed. A permanent injunction, as described herein, shall issue.

SO ORDERED.