[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: TEMPORARY INJUNCTION
Plaintiffs bring this action for a temporary and permanent injunction, a declaration of rights in regard to some of Defendant's land, damages and punitive damages.
The court has now heard the parties in regard to the temporary injunction.
The Defendant has filed her answer and special defenses. She also filed a counterclaim in four counts but did not seek any specific relief except damages. The court considers the special CT Page 4432 defenses and the evidence about the counterclaim but does not consider the counterclaim itself for this decision.
 FACTS
The parties have stipulated to the following facts:
"1. Dwight Weed represented the McManus' when they purchased the property at 80 Owens Lane, Glastonbury, Connecticut.
2. Dwight Weed performed a title search for the property at 80 Owens Lane in connection with the McManus' purchase.
3. Dwight Weed knew the McManus' property had a 20 foot right-of-way over the abutting property at 79 Owens Lane as described in their Deed. McManus' property was also subject to an easement in favor of the Roggi property as set forth in their Deed.
4. Dwight Weed represented the McManus' when they signed a Boundary Line Agreement with Linda Roggi. Said Agreement refers to a map of a Boundary Line correction which map includes a reference to the 20 foot right-of-way.
In addition the court finds that the parties own adjoining pieces of real property in Glastonbury, Connecticut. Defendant owns property, known as 79 Owens Lane, by way of Warranty Deed from Jose and Katherine Lujambio dated March 29, 1994. The Lujambio's took title to the property from Frances Traskos on June 17, 1986. The Plaintiffs obtained title to their property, known as 80 Owens Lane, by Warranty Deed from Harriet Beech dated December 9, 1994. Ms. Beech obtained title on May 15, 1979 from Clifford and Judith Wood. The Wood title derived from a warranty deed of June 10, 1968 in fee simple and a quit claim deed of November 5, 1968 of an easement and a right-of-way from Walter J. and Frances M. Traskos. In addition they received a warranty deed from Frances M. Traskos on May 15, 1979 including "a 20' R.O.W. as follows:
"Together with a 20' R.O.W. along and parallel to the CT Page 4433 westerly line of land now or formerly of Clifford W. Wood, et al, commencing at the southerly line of Owens Lane and extending a distance of 215.39 feet to an iron pin, for the purpose of ingress and egress by foot and motor vehicle"
The Woods built the present house #80 in 1979. The 1979 right of way was given to obtain Town approval for the erection of that house.
The Plaintiffs moved into the property in January 1995.
The easement of November 3, 1968 refers to a map entitled "Plan of Location of 20' R.O.W. To Be Conveyed to Others by W. Traskos et al. Glastonbury, Conn. Scale 1" = 20' October 31, 1968" which is recorded on the Glastonbury Land records. That map shows the easement to be 130 feet long but also indicates it is 215.33 feet long. The deeds to the Woods, and subsequent title holders, grant this easement as 215.29 feet long.
A paved area lies between the landscaped portion of ma. Roggi's property and the right of way. This area has been maintained by the Town as part of Owens Lane under Article III § 17-31 et seq. of the Town Regulations since at least 1948. The Town paved Owens Lane with sand and tar in 1968 all the way from Hebron Avenue to the grass area before a rental house on defendant's property at the south end of any traveled way. It repaired this area with "bituminous concrete" in about 1990. That paving is thirty-two feet wide beginning at the stone post at the northerly end of Defendant's property and it expands to thirty-seven feet at its southern end. The portion paved with sand and tar and with the bituminous concrete overlays part of Plaintiffs right of way. The Town in its paving, maintenance and plowing makes no distinction as to the "official" Owens Lane and the paved portion south of the stone post. The "official" Owens Lane runs two-tenths of a miles south from Hebron Avenue.
There is no question that the Plaintiffs do in fact have a right-of-way at least 20 foot wide over Defendant's land abutting CT Page 4434 her easterly boundary line. This right-of-way is at least 215.39 feet long and none of it has been abandoned by the Plaintiffs or any of their predecessors in title.
When the Plaintiffs purchased their home in 1994, their property contained a pond formed from the flow of Roaring Brook. At the westerly end of the pond was a concrete bridge approximately 8' wide which passed over the dam which caused the pond to form. In July 1995, the pond went dry.
At some time after Plaintiffs brought their Property they told Defendant that they wanted to rebuild the bridge and dam and that their plan showed that some feet of the new dam would encroach upon her property. Defendant agreed.
The Plaintiffs retained J.A. Casella Excavation of Glastonbury to reconstruct the dam area to prevent the pond from leaking and to reconstruct the bridge over that dam.
At the time of this reconstruction, the Plaintiffs and the Plaintiffs' contractor asked permission of the Defendant to expand the area of the dam and the bridge over part of her property at no cost to her and she agreed orally.
The project was then begun and the eight foot bridge was replaced with a twenty foot dam with a bridge over part of it, all as designed by the Town of Glastonbury Environmental Planner, Tom Mocko. It was completed at a cost of $7,700, which Plaintiffs paid. During that reconstruction the Defendant never asked Plaintiff to cease building part of it on her property.
Both property owners used the reconstructed bridge regularly since that time without incident until June, 1999.
On June 13, 1999, the Defendant caused to have placed wooden stakes along the property line as it crosses the bridge, effectively cutting it in half. These stakes prevented the Plaintiffs from safely driving farm vehicles to their property on the other side of the pond for a short time. These stakes have CT Page 4435 been removed from the bridge by the Defendant. Defendant also installed a fence approximately along the property line north of the dam/bridge which makes the Plaintiffs' use of the bridge with their farm vehicles more difficult.
Defendant has the right to pass and repass over Plaintiffs' property as follows:
 "Subject to the right of Frances Traskos, her heirs and assigns, the rights of ingress and egress to pass and repass over land of grantee and especially over the bridge of the grantee crossing Roaring Brook, together with right of ingress and egress to said bridge."
The bridge is the top of the dam. Defendant has exercised her easement rights as granted.
Because there is no evidence and because the court has no expertise in the subject matter the court cannot find that it is more probable than not that the bridge and dam as built will add to any flooding on Defendant's land.
The relationship between the parties became antagonistic beginning in about May 1998 in regard to Plaintiffs boarding of horses with Defendant. But until June, 1999, the Plaintiffs, the Defendant, their guests, tenants and business invitees shared the road amicably and without incident. Before that date Defendant never complained about Plaintiffs' use of the road or attempted to restrict their use of the road to their deeded right of way of twenty feet. After that date the Plaintiffs on at least one occasion drove partly onto ma. Roggi's driveway uninvited. Ms. Roggi had a survey prepared but it was not introduced into evidence. She put up stakes on the bridge and beyond it to delineate her property but there was no proof offered that this conformed to the evidence in any survey. She removed the stakes on the bridge after a short time.
Beginning with the Woods all the owners and occupiers of #80 treated their use of the paved area as a right whether it was or CT Page 4436 was not in fact Owens Lane or a granted easement.
In June, 1999, the Defendant began to act in ways that Plaintiffs claim interfered with and obstructed their use of the road by installing fencing along its easterly boundary and parking vehicles on the paved portion of the road which impeded use of their driveway.
The Defendant also removed all the trees and shrubs on Defendant's property along the unpaved portion of the right of way in front of Plaintiffs' house which had been growing there since 1970 and erected a white fence on each side of Plaintiffs' driveway. The corner posts of each of those fences nearest the driveway is about 3 feet from the driveway.
Because of Defendant's interference with Plaintiffs' use of the road, the feed store will no longer deliver to the Plaintiffs' home and other tradesmen have expressed concern about their ability to get their trucks in and out of the Plaintiffs' driveway.
Because of the signs Defendant has erected and Defendant's attempts to restrict passage over the road, the town will no longer plow all of Owens Lane up to the rental house as it used to. Leaving the road unplowed will make it difficult, for emergency vehicles, mail trucks and other delivery vehicles to reach Plaintiffs house and the rental house at the southerly terminus of "Owens Lane".
From 1994, when Plaintiffs moved into their house, until the time of trial, they used the entire paved surface of Owens Lane, including that portion between their house and the Defendants' landscaped property to the west, for ingress and egress to and from Hebron Avenue. During that period fuel oil delivery trucks, delivery trucks supplying feed to the Plaintiffs' horses, and similar service or tradesmen's vehicles have used the paved portion of the road without regard for the specific location of Plaintiffs' right of way. Such vehicles have also stopped in the right of way to unload. The Plaintiffs have never sought CT Page 4437 permission of the Defendant to use any part of the paved road nor was such permission granted.
The Plaintiffs and the Plaintiffs' predecessors in title used the paved road between Plaintiffs' and Defendant's property consistently, openly and continuously for more than fifteen years without recognition of any ownership rights in the Defendant or the Defendant's predecessors in title.
LAW
In this action for a temporary injunction the Plaintiffs must prove that they have no adequate remedy at law, will suffer substantial injury, and that they will probably obtain a judgment in their favor on the trial of the permanent injunction. Even if Plaintiffs satisfy those three requirements, the Court must still balance the equities among all parties. Moore v. Serefin,163 Conn. 1, 8.
For the interference with the use of their claimed easement Plaintiffs have no adequate remedy at law. If the present situation continues the Plaintiffs' will suffer substantial injury.
The right to a prescriptive easement requires that plaintiff "must establish a use that is open, visible, continuous and uninterrupted for fifteen years and made under a claim of right.DiSorbo v. Grand Associates One Limited Partnership,8 Conn. App. 203, 205. Such adverse use may only be proven by clear and convincing evidence. Barnes v. Zukoski, 148 Conn. 158, 165-166. Plaintiffs have done that. Plaintiffs must in their evidence locate the boundary lines. Id. 165. They have done this by the maps in evidence together with the clear and convincing evidence of where the extension of Owens Lane has been maintained since 1948 and where it has been paved by the Town since 1968. For over 20 years the Town has treated Owens Lane as ending south of both driveways and extending to where paving ends.
Although we have no engineer or map to tell us where the paved CT Page 4438 area south of the Defendants stone post is, we do see that area and it was there in the many photographs submitted and, of course, the court saw it during the viewing process. We also know that the Plaintiffs used openly, visibly, continuously and uninterruptedly for over fifteen years that entire paved surface but not to south of the pavement. Klar Crest Realty, Inc., v.Rajon Realty Corporation. 190 Conn. 163, 171.
The Court cannot find at this time that the Plaintiffs have abandoned any part of their rights in the easement, their rights in the paved area or their use of Owens Lane as extended.
The Court finds that Plaintiffs have a prescriptive easement over that portion of the Defendants property known as #79 Owens Lane in Glastonbury and its southerly de facto extensions over all the paved area.
In addition plaintiffs have a right to cross and recross a certain dam/bridge located in part on Defendant's property because Defendant consented to the rebuilding of the dam/bridge, watched its layout and construction and never objected or complained until 1999. She is thus estopped from pursuing any complaint here that Plaintiffs are encroaching on her property without her permission. Aczos v. Stuart Heights, Inc.,154 Conn. 54, 59-60. The facts supporting this finding of estoppel have been proven by clear and convincing evidence. Girden v.Celubowicz, 136 Conn. 511, 513.
Plaintiffs, as in DiSorbo (supra) n3, seek not an injunction allowing their use of the paved area but rather an injunction prohibiting Defendant from interfering with their prospective easement. The same is true of the dam/bridge claim.
Judgment for Plaintiffs for full and unfettered use of all the paved area in question, including but not limited to Town of Glastonbury maintenance and plowing and the use by vehicles making deliveries and any necessary parking to unload same. The court makes no order regarding the location of the fence posts or the possible difficulties in the use of the bridge. CT Page 4439
O'Neill, J.