## STATE OF CONNECTICUT *v.* ADRIAN SANTIAGO
### (SC 16055)

McDonald, C. J., and Borden, Katz, Palmer and Sullivan, Js.

Argued January 13—officially released April 4, 2000

*Martin Zeldis*, assistant public defender, for the appellant (defendant).

*Carolyn K. Longstreth*, senior assistant state's attorney, with whom were *Mark A. Stabile*, supervisory assistant state's attorney, and, on the brief, *Mark S. Solak*, state's attorney, for the appellee (state).

*Ann M. Parrent* filed a brief for the Connecticut Civil Liberties Union Foundation as amicus curiae.

*Opinion*

PER CURIAM. After a jury trial, the defendant, Adrian Santiago, was convicted of murder in violation of General Statutes § 53a-54a (1).[1] After his conviction, the

---

[1] General Statutes § 53a-54a provides in relevant part: "(a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person . . . ."

defendant moved for a new trial because of juror misconduct. One juror, June Briere, claimed that another juror, Dan M., had made statements such as: "What do you care about a spic?," "Let's get one more spic off the streets of Willimantic," and "Of course he's guilty, he's a spic." After hearing testimony from Briere and the jury foreperson, Paul Belanger, who testified that he did not recall any juror making any ethnic slurs, the trial court denied the defendant's motion. The court based its conclusion that Briere's allegations were not credible on inconsistencies in her story and her apparent loss of objectivity with regard to the defendant. The defendant appealed from the judgment of conviction to this court, claiming, inter alia, that the trial court had failed to conduct an adequate inquiry into allegations of juror misconduct. *State* v. *Santiago*, 245 Conn. 301, 323–40, 715 A.2d 1 (1998).[2] Exercising our supervisory authority over the administration of this state's courts, we reversed the judgment as to the scope of the trial court's inquiry into allegations of juror misconduct and remanded the case to the trial court for a more expansive inquiry into the allegations. Id., 339–40.

On the remand, the trial court heard the following evidence. Dan M. testified that he did not make any of the statements alleged by Briere. Dan M. also testified that, during voir dire, in response to a question regarding whether he had overheard any racist comments while in the jury assembly room, he reported that a woman in the jury room had commented that there would be "one less spic off the street . . . ." He testified that he was uncomfortable using this derogatory word, even in the limited context of repeating another person's statement. Dan M. could not remember

---

[2] In that appeal, the defendant also raised issues regarding his waiver of the probable cause hearing and the trial court's denial of his motion to suppress his statements. We affirmed the judgment with respect to those issues. *State* v. *Santiago*, supra, 245 Conn. 340.

whether he had mentioned the woman's derogatory statement to any other jurors. Dan M. also testified that he recalled eating lunch at a McDonald's restaurant one day during the trial. While there, he recognized some people who had been attending the proceedings, and, in order to avoid any contact with them, he left and ate his lunch in his car.

Briere testified that Dan M. used racial slurs on two occasions during the trial. According to Briere, on February 7, 1996, the entire jury was watching the news in the assembly room when Dan M. said, "just like this case, one less spic on the streets of Willimantic." Briere also testified that, on that occasion, Dan M. stated in a loud and boisterous voice, "What do you care about a spic?" and "He's guilty, he's a spic." According to Briere, the second incident occurred on February 27, 1996, when Dan M., following his return from lunch at McDonald's, stated in a loud voice that he had "overheard all the spics talking about the Santiago case" and that they had stated that the defendant was guilty. Briere testified that, after Dan M. made this statement, two other jurors, Barbara Loy and Glory Beir, criticized him for bringing outside information into the jury room.

Briere further testified that, after the trial, she brought this information to defense counsel, Mark Shapera, who advised her to write a letter to the judge. Briere testified that, on Shapera's advice to keep the letter "plain and simple," Briere omitted any reference to Dan M.'s racial bias in her letter.[3] Briere stated that,

[3] The letter to the trial court provided:

"I have contemplated the circumstances and sentencing of [the defendant] for a month. At the time he was found guilty, I was not certain he was guilty and still question the facts. I do believe if he had ever taken the stand and said no I did not do it or that he signed a statement under duress he never would have been found guilty. I personally would not have found him guilty.

"My feelings are if he did commit this crime against [the victim] how many parents/children did he save from the heartbreak of drug abuse, or from a person selling that stuff to our children.

"Upon sentencing of [the defendant] on April 4, 1996, I pray you take into consideration the time he has served to date. I would like to help this young

after receiving no response from the trial judge, she called the courthouse and spoke with a clerk about her concerns. According to the clerk's notes from this conversation, Briere told her that Dan M. had reported to the jury that, during lunch one day, he had overheard other people referring to the defendant as a "spic."[4] Briere also testified that, since the trial, she had become "the champion of the defendant's cause," had appeared on news shows in support of his release, had referred to him as her "son," and even had readied a room in her home for him to stay in upon his release.

Six jurors[5] testified that they did not recall Dan M. making either statement alleged by Briere. Four of those jurors did not hear the word "spic" used by anyone throughout the entire trial. Although two jurors remembered hearing Dan M. use the word "spic" during the

man get his life on the right side of the law. I feel there is alot of good in this young man and I do plan to be in court that date if nothing but moral support for him and his loved ones. I also in the future plan to help him and his family in any way I can possible to enjoy our great country.

"Thank you for the time you have given me to air my feelings." (Internal quotation marks omitted.) *State* v. *Santiago*, supra, 245 Conn. 324–25 n.14.

[4] The court clerk's notes stated:

"On [April 3, 1996] at approximately 2:45 p.m., I spoke with June Briere regarding [the defendant]. She indicated to me that she conducted her own investigation on the streets of Willimantic and found existing evidence that [the defendant] is innocent. She stated that on April 4, 1996, she intends to testify on [the defendant's] behalf. Ms. Briere also stated that she was pressured by the other jurors to find [the defendant] guilty. She stated that on one occasion one of the jurors returned from lunch and reported conversations he heard in a restaurant referring to [the defendant] as a 'spic.'

"My conversation with Ms. Briere was emotional and disorganized on her part. She indicated that she was concerned about 'breaking down' on the stand. She stated that she has previously spoken to [defense counsel] Shapera and is attempting to have her own attorney present on April 4, 1996." (Internal quotation marks omitted.) *State* v. *Santiago*, supra, 245 Conn. 325 n.15.

[5] Those jurors were Walter Lynch, Jean Collette, Roger Hayward, Barbara Loy, Glory Beir and Belinda Prindle. The jury foreperson, Paul Belanger, did not testify at the remand hearing, but his testimony at the first hearing echoed the testimony of the six jurors who did testify.

trial, they both stated that Dan M. was merely repeating comments that he had overheard, and that he was not himself using the term as a description of the defendant or any other person.[6] The state questioned three jurors regarding whether racial prejudice had played a role in the jury deliberation, and all three jurors stated that it had not.[7]

The trial court denied the defendant's motion for a new trial based on juror misconduct. The court found Briere's testimony to be unworthy of credibility, and concluded that her claims of juror bias were not credible. Accordingly, the trial court rendered judgment denying the defendant's motion for a new trial. The defendant appealed from this judgment directly to this court.[8] We affirm that judgment.

On appeal, the defendant claims that the trial court improperly denied his motion for a new trial. The defendant claims that the testimony of Walter Lynch and Loy supports Briere's allegations, and establishes that Dan M. used racial epithets during the trial. The defendant

[6] Walter Lynch testified that Dan M. used the word "spic" in the context of a conversation about the kinds of questions that they had been asked during voir dire to become a juror. Dan M. told Lynch that he was questioned regarding the juror who had been excused for using the derogatory term.

Loy testified that she remembered that Dan M. returned from lunch one day and stated that he had overheard some people talking about the case. The people had used the word "spic," and Dan M. had repeated the word in relaying the event to the other jurors. Loy testified that Dan M. seemed uncomfortable about the incident. Loy said that she cautioned Dan M. not to listen to what people said outside the jury room, but she denied "admonishing" him for sharing the incident with other jurors. Loy stated that she did not think it was inappropriate for Dan M. to relay this incident to the jury, and she did not think it necessary to report the conversation to the court.

[7] Walter Lynch, Loy and Beir were asked whether racial prejudice had played any role in the juror deliberations. Jean Collette, Roger Hayward and Belinda Prindle were not asked that question by either party.

[8] General Statutes § 51-199 (b) provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony . . . ."

argues that Dan M. was not truthful when he claimed that the only time he had used the word "spic" was during the course of his voir dire. The defendant also claims that he was prejudiced by Dan M.'s bias and the effect that it had on the other jurors. We disagree.

"Our analysis begins with the appropriate standard of review. We have long held that a finding of fact is reversed only when it is clearly erroneous. See, e.g., *Poulos* v. *Pfizer, Inc.*, 244 Conn. 598, 616, 711 A.2d 688 (1998). A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. Id. Simply put, we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses. . . . *Rostain* v. *Rostain*, 214 Conn. 713, 716, 573 A.2d 710 (1990)." (Internal quotation marks omitted.) *Hartford Electric Supply Co.* v. *Allen-Bradley Co.*, 250 Conn. 334, 345–46, 736 A.2d 824 (1999).

The defendant contends that, given the seriousness of allegations of racial bias on the part of a juror, this court should review the trial court's conclusions on a de novo basis. We decline to do so. The trial court's decision was based on its factual findings that the events reported by Briere never had occurred. This court reviews factual findings under the clearly erroneous standard, even when faced with allegations as serious as racial bias or discrimination in jury selection. In *State* v. *Santiago*, supra, 245 Conn. 336, we reaffirmed that "[o]ur decision to provide additional guidelines for conducting a preliminary inquiry in situations of racial allegations in no way undermines the discretion we accord to the trial courts in making credibility assessments . . . ."

Upon review of the evidence, we conclude that the trial court's determination that Briere's allegations were not credible was not clearly erroneous. There was ample evidence that Briere had lost her objectivity and had become an advocate for the defendant. Briere's testimony also was undermined by numerous inconsistencies. The fact that Lynch and Loy testified that Dan M. had used the word "spic" to repeat something that he had heard does not support the defendant's allegations that the juror was "racially biased." See id., 339. Moreover, Lynch and Loy testified that racial prejudice played no role in the jury's verdict.

The judgment is affirmed.