RAYMOND TOOLEY *v.* METRO-NORTH COMMUTER
RAILROAD COMPANY
(AC 19429)

Foti, Mihalakos and Peters, Js.

Argued April 25—officially released June 27, 2000

*Lewis H. Chimes*, with whom, on the brief, was *Jennifer Willcox*, for the appellant (plaintiff).

*Adam S. Bozek*, with whom, on the brief, were *Mary C. Dollarhide* and *Carol S. Barnett*, for the appellee (defendant).

*Opinion*

PETERS, J. In *Shortt* v. *New Milford Police Dept.*, 212 Conn. 294, 304, 562 A.2d 7 (1989), the Connecticut Supreme Court held that a trial court lacks subject matter jurisdiction to hear an employee's claim for wages under General Statutes § 31-72[1] until the

---

[1] General Statutes § 31-72 provides in relevant part: "Civil action to collect wage claim, fringe benefit claim or arbitration award. When any employer fails to pay an employee wages in accordance with the provisions of sections 31-71a to 31-71i, inclusive . . . such employee or labor organization may recover, in a civil action, twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, and any agreement between him and his employer for payment of wages other than as specified in said sections shall be no defense to such action. . . . "

employee has exhausted his or her administrative remedies by complying with the grievance procedure specified in an applicable collective bargaining agreement. The principal issue in this appeal is whether this jurisdictional barrier is overcome by an employer's partially affirmative response to an employee's informal grievance that does not comply with the procedures specified in a collective bargaining agreement. Despite such conduct by the employer, the trial court in this case concluded that the employee had failed to exhaust his administrative remedies and that the court therefore had no subject matter jurisdiction to proceed. We agree.

## I

## PROCEDURAL AND FACTUAL HISTORY

The plaintiff, Raymond Tooley, filed a two count complaint in which he alleged that the defendant, Metro-North Commuter Railroad Company, by denying him access to overtime work, had violated its duties to pay him wages to which he was entitled. In count one, relying on a collective bargaining agreement between the defendant and the plaintiff's union, the plaintiff alleged that § 31-72 gave him a statutory right to receive the wages that he had lost for lack of overtime work. In count two, the plaintiff alleged that, apart from the collective bargaining agreement, he had a common-law right to recover lost wages as damages for breach of contract by the defendant. The defendant filed a motion to dismiss in which it claimed that the trial court lacked subject matter jurisdiction to entertain the plaintiff's complaint. According to the defendant, because the plaintiff had failed to exhaust his administrative remedies under the collective bargaining agreement as required both by the Railway Labor Act, 45 U.S.C. § 151 et seq.[2] and General

---

[2] Title 45 of the United States Code, § 152 provides in relevant part: "All disputes between a carrier or carriers and its or their employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute. . . ."

Statutes § 31-72,[3] federal law preempted the plaintiff's complaint and required its dismissal. The court held an evidentiary hearing on the merits of the defendant's motion.

The trial court's memorandum of decision and the record as a whole reveal the following facts. The plaintiff, a longtime employee of the defendant, held the position of assistant supervisor from 1993 to 1997.[4] As a member of Local 1573 of the International Brotherhood of Electrical Workers (union), the plaintiff's employment was governed by a collective bargaining agreement (agreement). Section 4-M-1 (a) of the agreement provided: "A claim or grievance must be presented by an employee or on his behalf by his union representative to the employee's General Foreman or other designated official *and the director-labor relations* within thirty (30) days from the occurrence on which the claim is based." (Emphasis added.)

The plaintiff was an hourly employee of the defendant. He claimed that, because the defendant had deprived him of the opportunity to have a fair share of overtime work, he had been denied wages to which he was entitled.

On July 27, 1993, he first voiced his claim by submitting to his union representative a document entitled "Grievance." Although he sent copies of this document to several persons who qualified as "designated officials" under the agreement, he failed to send such a copy to the director-labor relations.[5]

---

[3] See *Shortt* v. *New Milford Police Dept.*, supra, 212 Conn. 310.

[4] The plaintiff has not challenged the validity of the termination of his employment as supervisor. According to an affidavit filed on behalf of the defendant, the department in which the plaintiff worked was reorganized in June, 1997. The plaintiff applied for, but was not selected for, a supervisory job in the reconstituted department. He selected a foreman's job in accordance with his seniority.

[5] On August 3, 1993, the plaintiff's union representative filed a procedurally proper grievance, but that filing did not assert any right to overtime compensation. The plaintiff provided the trial court with no documentation support-

On December 1, 1996, the plaintiff again complained to his union in writing about unfair distribution of access to overtime work. As had been the case with the earlier "Grievance," he sent copies to certain "designated officials" but not to the director-labor relations. Early the following year, a union representative asked the defendant's deputy chief engineer for a meeting to discuss the plaintiff's claim.

On March 1, 1997, the plaintiff wrote to Frank Torre, one of the defendant's assistant chief engineers, to request certain overtime assignments. Again, he failed to send a copy to the director-labor relations. Nevertheless, on March 17, 1997, Torre wrote a memorandum to Thomas Maroselli, senior engineer, and Joseph Cleary, general supervisor, directing them to involve the plaintiff in "catenary supervisor overtime rotation." The plaintiff's position as supervisor ended in June, 1997.[6]

The plaintiff testified that he had received oral assurances from the defendant that his claims for overtime compensation had been granted. Because this testimony was vague and lacked documentary support, the trial court declined to find it credible. It is not disputed, however, that the defendant never informed the plaintiff in writing that his claims had been denied.

Witnesses for both parties agreed that, despite the provisions of the agreement, the defendant had not always insisted on notice to the director-labor relations as a condition for acting on an otherwise meritorious employee complaint. The defendant's witness on this issue was its labor relations representative, who worked for the director. The plaintiff so testified on his own behalf.

---

ing his allegation that he had subsequently filed additional written grievances.

[6] See footnote 4.

On this record, the trial court concluded that, because the plaintiff had never given proper notice of his claim for overtime wages to the director-labor relations, as required by the collective bargaining agreement, the plaintiff had failed to exhaust his administrative remedies.[7] The court further concluded that, in the absence of exhaustion of the plaintiff's administrative remedies, he could not prevail on either count of his complaint. Finally, the court concluded that the federal Railway Labor Act preempted the plaintiff's breach of contract claim, which raised issues closely related to those encompassed by the collective bargaining agreement. Accordingly, the court granted the defendant's motion to dismiss.

The plaintiff has appealed from the judgment of dismissal on three grounds. He maintains that the trial court improperly concluded that (1) he had failed to exhaust his administrative remedies and therefore could not prevail on his statutory claim for wages, (2) he had failed to demonstrate that his breach of contract claim was not inextricably intertwined with his rights under the collective bargaining agreement and therefore was preempted by the federal Railway Labor Act and (3) the defendant had responded appropriately to the plaintiff's requests for pretrial discovery. We are not persuaded by any of the plaintiff's claims.

---

[7] The court observed that notification of the director-labor relations was a significant part of the grievance process because the absence of such notification meant that "[the defendant's] labor relations department never learned of [the plaintiff's] 'Grievance' and consequently never became involved in the grievance process with respect to that document." The plaintiff has not challenged the accuracy of the court's observation. He does not claim that, apart from the manner in which the defendant responded to this document and to similar past filings, he had substantially complied with the requirements of the grievance process. Similarly, he does not claim any ambiguity in the grievance process as spelled out in the agreement. Finally, he points to nothing in the agreement that imposes upon other management employees the duty to notify the director-labor relations of pending grievances.

## II

## STANDARD OF REVIEW

In *Taft* v. *Wheelabrator Putnam, Inc.*, 55 Conn. App. 359, 362, 742 A.2d 366 (1999), cert. granted on other grounds, 252 Conn. 918, 919, 744 A.2d 439, 440 (2000), we recently reviewed the well established rules that govern an appeal from a judgment dismissing a complaint for lack of subject matter jurisdiction. "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . Because the exhaustion [of administrative remedies] doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of the [plaintiffs'] claim. . . . [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . *Lawrence Brunoli, Inc.* v. *Branford*, 247 Conn. 407, 410, 722 A.2d 271 (1999)." (Citations omitted; internal quotation marks omitted.) *Taft* v. *Wheelabrator Putnam, Inc.*, supra, 362; see *Pamela B.* v. *Ment*, 244 Conn. 296, 308, 709 A.2d 1089 (1998); *Johnson* v. *Dept. of Public Health*, 48 Conn. App. 102, 107–108, 710 A.2d 176 (1998).

We adhere to these principles today. The plaintiff does not challenge the accuracy of the two principal factual findings made by the trial court in support of its dismissal of his complaint. He does not question the fact that, in his various communications with his employer, he never sent a copy of his alleged grievance to the director-labor relations. Similarly, he does not question the fact that, as a union member, he was bound

by the terms of the agreement between the union and the defendant. Because the claims on appeal challenge principally the legal conclusions drawn by the trial court, we must undertake a plenary review of the basis for the trial court's judgment of dismissal.[8]

## III

### THE STATUTORY WAGE CLAIM UNDER § 31-72

The plaintiff's appeal from the dismissal of his statutory cause of action under § 31-72[9] does not dispute the basic proposition that a trial court lacks subject matter jurisdiction to hear his claim until he has exhausted the administrative remedies to which he has access. *Shortt* v. *New Milford Police Dept.*, supra, 212 Conn. 304. Instead, he maintains that functionally, if not precisely, he did exhaust the administrative remedies afforded to him by the grievance procedures contained in the agreement between his union and the defendant. Specifically, he argues that the trial court improperly concluded that (1) his correspondence with the defendant did not constitute a grievance, (2) the defendant's response to that correspondence did not prevent him from further pursuit of the grievance process and (3) the defendant's conduct throughout did not obstruct his access to the grievance process.

---

[8] We disagree with the contention of both parties that the trial court made findings of fact when it determined that the plaintiff had failed to exhaust his administrative remedies and had failed to file a proper grievance. Because these determinations required the application of facts to legal constructs, they were mixed questions of law and fact requiring plenary review. *State* v. *Pinder*, 250 Conn. 385, 410, 736 A.2d 857 (1999).

[9] Both parties have briefed the defendant's claim that the plaintiff's state cause of action under § 31-72 was preempted by the federal Railway Labor Act. We need not decide this preemption issue. If the plaintiff's claim is jurisdictionally defective as a matter of state law, it is irrelevant that it also may be jurisdictionally defective as a matter of federal law. See *Buonocore* v. *Branford*, 192 Conn. 399, 401, 471 A.2d 961 (1984).

It is noteworthy that each statute precludes any remedy for a litigant who has failed to demonstrate his or her exhaustion of administrative remedies.

Before we address these specific claims, we must put them into context. "[J]urisdiction of the subject matter is a question of law and cannot be waived or conferred by consent either in the trial court or here." (Internal quotation marks omitted.) *Simms* v. *Warden*, 229 Conn. 178, 180, 640 A.2d 601 (1994); *Serrani* v. *Board of Ethics*, 225 Conn. 305, 308, 622 A.2d 1009 (1993); see also Practice Book § 10-33. To prevail in his appeal, it is, therefore, not enough for the plaintiff to show that the facts of record[10] establish that the defendant, by its conduct, waived the requirement of exhaustion of remedies. He must show, instead, that such conduct demonstrates the plaintiff's compliance with that requirement. This is a difficult assignment. We are persuaded that the plaintiff has not made the requisite showing.

First, the plaintiff argues that his communications to the defendant on July 27, 1993, December 1, 1996, and March 1, 1997, initiated the grievance process, despite his failure to notify the director-labor relations, because the defendant never issued a written denial notifying the plaintiff that his grievance had been rejected. The short answer to that argument is that the plaintiff has not identified any provision of the collective bargaining agreement that imposes such a duty whenever the defendant receives a document denominated "Grievance." Only proper notification triggers the defendant's obligation affirmatively to deny a grievance.

Second, the plaintiff argues that, the defendant, by agreeing to implement the plaintiff's claim for overtime

---

[10] Although the plaintiff asserts that the defendant gave him verbal assurances that he would be paid for overtime work, the trial court made a finding of fact that this assertion had not been proven. The plaintiff has not demonstrated that this finding was clearly erroneous. He does not dispute that the assertion was supported only by his own testimony, which the trial court had the authority to discredit. *State* v. *Santiago*, 252 Conn. 635, 640, 748 A.2d 293 (2000).

work, in effect accepted the grievance and was bound to follow through on that acceptance. This argument is difficult to distinguish from a claim of waiver. Furthermore, nothing in the agreement requires the defendant to channel, through the grievance process, all of its responses to employee complaints about working conditions. As a matter of good employer-employee relations, the defendant retained the option to search, informally, for a workplace accommodation for any complaint, even though the complaint did not qualify as a formal grievance. The fact that such an accommodation proved to be unsatisfactory to the plaintiff did not convert an improperly filed grievance into one that complied with unambiguous procedural requirements in the collective bargaining agreement. Accordingly, such an accommodation does not demonstrate that the plaintiff properly exhausted the administrative remedies contained in that agreement.

Third and finally, the plaintiff argues that the defendant's conduct, in acknowledging the legitimacy of his complaint, constituted the acceptance of his grievance. Once the defendant accepted a grievance, the grievance procedures specified in the agreement were concluded. Under the agreement, the acceptance of a grievance precluded an employee from further access to its second or third steps.[11] According to the plaintiff, because

[11] The agreement outlined a three step process for dealing with grievances. First, a grievance is initiated by the employee or his union by notifying the appropriate official in writing within thirty days of the occurrence on which the claim is based. A copy of the written grievance must also be sent to the director-labor relations. Once the written grievance is received, the official has thirty days to notify the employee or his representative of whether the grievance was allowed or disallowed. If there is no such response, the grievance is considered allowed and is listed with the director-labor relations. Second, if the grievance has been allowed it will be discussed at a monthly meeting with the local committee. If the grievance has been disallowed, the employee may, within thirty days, list it for such discussion. When a grievance is denied after discussion, the director-labor relations must notify the employee of the reason for the denial within thirty days after the grievance was discussed. If no written denial is provided within

the defendant's conduct precluded him from further review of his grievance, he has fulfilled the requirement of exhaustion of remedies. See *Glover* v. *St. Louis-San Francisco Railway Co.*, 393 U.S. 324, 330–31, 89 S. Ct. 548, 21 L. Ed. 2d 519 (1969); *Hunt* v. *Prior*, 236 Conn. 421, 432, 673 A.2d 514 (1996). We disagree with this argument for much the same reasons as we have just discussed in the previous paragraph. The plaintiff has failed to demonstrate that the defendant's conduct must be characterized as an acceptance of a formal grievance. Nothing that the defendant said or did prevented the plaintiff from filing a proper grievance on the ground that, although he had been promised the right to have overtime work, he had never received any wages to compensate him for the defendant's failure to follow through on that promise. The defendant's conduct, therefore, did not interfere with the plaintiff's access to the grievance procedures specified in the agreement and did not excuse his failure to exhaust his administrative remedies.[12]

In conclusion, the trial court properly granted the defendant's motion to dismiss the first count of the plaintiff's complaint. The requirement of exhaustion of administrative remedies as a prerequisite to judicial relief under § 31-72; *Shortt* v. *New Milford Police Dept.*, supra, 212 Conn. 304; was not satisfied by the plaintiff's submission of a document denominated "Grievance."

the thirty days, the grievance is considered allowed. Third and finally, an employee may seek arbitration when a grievance has been denied. When a claim has been allowed, the employee will be notified in writing of the amount and payroll involved.

[12] The plaintiff alleges, inter alia, that his failure to exhaust his administrative remedies "should be excused . . . because of the defendant's repeated and apparently wilful failure to follow its own grievance procedures." The plaintiff's complaint did not allege wilful misconduct. The trial court's memorandum of decision made no ruling with respect to wilful misconduct. It is too late to make such a claim now. Practice Book § 60-5; *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 444 n.10, 685 A.2d 670 (1996).

By the express terms of the collective bargaining agreement, notification of the director-labor relations was an integral part of a proper submission. Because the plaintiff failed to give such notification, he never filed a proper grievance and, therefore, did not exhaust his administrative remedies.

## IV

### THE COMMON-LAW CLAIM FOR BREACH OF CONTRACT

The plaintiff also appeals from the judgment of the trial court dismissing the second count of his complaint, in which he alleged a common-law right to recover damages for breach of contract from the defendant. The trial court concluded that this count also was jurisdictionally defective because it was preempted by provisions of the federal Railway Labor Act that required exhaustion of administrative remedies as a prerequisite to access to judicial intervention. 45 U.S.C. § 152.[13] Despite the plaintiff's arguments to the contrary, we affirm the judgment of the trial court.

The plaintiff alleges that the defendant acknowledged the merits of his claim to receive an equitable share of overtime and wrongfully failed to compensate him for the overtime to which he was entitled. The principal factual basis for this claim was a memorandum written by Frank Torre on March 17, 1997. That memorandum *mandated* that "[the plaintiff] be involved in catenary supervisor overtime rotation." It asked its addressees to make "recommendations by March 31, 1997 as to how much [the plaintiff] is owed." The plaintiff alleged that the defendant wrongfully failed to perform its contract obligation to pay him for lost overtime.

In reaching its conclusion that, regardless of the substantive merits of the plaintiff's claim, it was jurisdic-

---

[13] See footnote 2.

tionally preempted by the Railway Labor Act, the trial court made two factual and legal determinations that are not challenged on appeal. First, the plaintiff does not contest the fact that, as an hourly employee of the defendant, he is subject to the provisions of the Railway Labor Act. Second, he does not challenge the proposition that the Railway Labor Act requires the submission to grievance processes of so-called minor disputes that involve the interpretation or application of existing labor agreements. 45 U.S.C. § 151a (4) and (5);[14] *Hawaiian Airlines, Inc.* v. *Norris*, 512 U.S. 246, 252–56, 114 S. Ct. 2239, 129 L. Ed. 2d 203 (1994). The applicable test is often articulated as an inquiry into whether the dispute concerns a claim that is "inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers Corp.* v. *Lueck*, 471 U.S. 202, 213, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985).

The focus of the plaintiff's argument on appeal is that, in this case, his common-law claim for wages was not "inextricably intertwined" with the collective bargaining agreement between his union and the defendant. Conceding that his right to overtime derived from the agreement, he argues, nonetheless, that he has stated an independent claim for lost wages because the claim does not require interpretation or application of the agreement but is based instead on the representations made by the defendant. As did the trial court, we find this argument unpersuasive.

The difficulty with the plaintiff's position is that it assumes that the representations upon which he relies can be divorced from the agreement to which they

---

[14] Title 45 of the United States Code, § 151a provides in relevant part: "The purposes of the Act are . . . (4) to provide for the prompt and orderly settlement of all disputes concerning rates of pay, rules, or working conditions; (5) to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions."

relate. The plaintiff testified that his breach of contract claim was based partially on the agreement. He has not alleged any basis for Torre's memorandum other than the agreement. Without reference to the agreement, there would be no way to determine the amount of wages that the defendant allegedly owed him as a result of Torre's memorandum. See *Fry* v. *Airline Pilots Assn., International*, 88 F.3d 831, 836 (10th Cir. 1996) (plaintiff's allegations are not dispositive in determining whether plaintiff's claims in some manner arise under collective bargaining agreement).

The cases upon which the plaintiff principally relies for a contrary view are distinguishable. Neither of them involves claims of a union member that cannot be resolved without reference to a collective bargaining agreement.

In *Foy* v. *Pratt & Whitney Group*, 127 F.3d 229, 236–37 (2d Cir. 1997), the United States Court of Appeals for the Second Circuit concluded that a common-law action for misrepresentation was not preempted because the alleged misrepresentation concerned a promised opportunity for transfer under circumstances not covered by the collective bargaining agreement. By contrast, the plaintiff's own complaint, in paragraph thirteen, alleged that "[t]he overtime available to Catenary Department Supervisors constituted 'wages'. . . . " Indisputably, the plaintiff's collective bargaining agreement addressed wages. E.g., Rules 4 and 11 of the collective bargaining agreement.

In *Hernandez* v. *Conriv Realty Associates*, 116 F.3d 35, 40 (2d Cir. 1997), the same court concluded that an employee could pursue, without preemption, a common-law action for breach of contract premised on three allegations. One was an alleged promise to pay the employee for work beyond the ordinary scope of his duties. Id., 39. The second was an alleged promise

to pay the employee, if he withdrew from his union, the same benefits that he had received as a union member. Id. Although enforcement of this second promise would require reference to the terms of a collective bargaining agreement, the court characterized the required consultation as tangential because the terms of the agreement were not in dispute. Id. The third was an allegation of intentional fraud undertaken with an intent to deceive. Id.

Although the distinction between the present case and *Hernandez* is a close call, we are persuaded by the defendant's argument that *Hernandez* is inapposite. Unlike *Hernandez*, the plaintiff does not seek to enforce a wage claim for work outside the scope of the collective bargaining agreement. Also unlike *Hernandez*, the plaintiff does not seek to enforce a promise for benefits that became payable when he was no longer a union member. Finally, unlike *Hernandez*, the plaintiff's complaint contains no claim of intentional misrepresentation. See footnote 12.

Our conclusion that the plaintiff's contract claim is inextricably intertwined with the terms of his collective bargaining agreement finds support in other federal court decisions. It is not dispositive that these cases arise in federal circuits other than our own. Although, for prudential reasons, we often pay special attention to the decisions of the Second Circuit interpreting and applying federal law; *Schnabel* v. *Tyler*, 230 Conn. 735, 743, 646 A.2d 152 (1994); *Red Maple Properties* v. *Zoning Commission*, 222 Conn. 730, 739 n.7, 610 A.2d 1238 (1992); we are bound only by the decisions of the United States Supreme Court. Other federal courts have held, for example, that federal law preempts state common-law claims that concern severance payments; *Wheeler* v. *St. Louis Southwestern Railway Co.*, 90 F.3d 327, 330 (8th Cir. 1996); or seniority rights; *Kollar* v. *United Transportation Union*, 83 F.3d 124, 126 (5th Cir. 1996);

even though these claims are couched in terms of breach of contract or common-law fraud.

## V

### CLAIM OF INSUFFICIENT DISCOVERY

The plaintiff's final claim is that he was prevented from fully responding to the defendant's motion to dismiss because the defendant improperly "refused to provide any substantive discovery prior to the evidentiary hearing." The defendant disputes this claim as lacking factual validity or legal propriety.

The plaintiff makes the unarguable claim that he was entitled to an evidentiary hearing, and to discovery as needed, in order to establish that the trial court had jurisdiction to hear his complaint. *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 56, 459 A.2d 503 (1983). Such an evidentiary hearing was held. The plaintiff has not cited to us any place, at that hearing, in which he claimed that he needed further time to present evidence or to pursue further discovery. As far as the record discloses, he never alerted the trial court to the claim of inadequate discovery.

The plaintiff apparently recognizes that the defendant provided some documents and proffered some witnesses who testified at the evidentiary hearing. He therefore couches his claim as an absence of "substantive discovery before the evidentiary hearing." He has not identified which of his unanswered discovery requests fell into this latter category. He has not identified any court ruling to compel production. He does not dispute the defendant's assertion that no objection was ever taken to the defendant's motion for a protective order.

On this record, the claim of insufficient discovery cannot be sustained. It suffices to note that, because the foundation for the claim is imperfectly articulated,

the claim has been briefed inadequately. Accordingly, we decline to consider its merits. *Barton* v. *Ducci Electrical Contractors, Inc.*, 248 Conn. 793, 820, 730 A.2d 1149 (1999).

The judgment is affirmed.

In this opinion the other judges concurred.