HOFFMAN FUEL COMPANY OF DANBURY *v.*
MICHAEL J. ELLIOTT ET AL.
(AC 21487)

Mihalakos, Flynn and Shea, Js.

Argued November 30, 2001—officially released February 19, 2002

*Ridgely W. Brown*, with whom, on the brief, was *Daniel Shepro*, for the appellants (defendants).

*George J. Kelly, Jr.*, with whom was *Glenn A. Duhl*, for the appellee (plaintiff).

*Opinion*

MIHALAKOS, J. The defendants, Michael J. Elliott and Callie A. Elliott, trustee of the Callie A. Elliott Family Trust, appeal from the judgment, rendered after a trial to the court, declaring that a prescriptive easement exists in favor of the plaintiff, Hoffman Fuel Company of Danbury, and permanently enjoining the defendants from obstructing the plaintiff's use of that easement. On appeal, the defendants claim that the trial court

improperly found that the plaintiff's past use of the disputed driveway encroachment area satisfied each of the elements giving rise to a prescriptive easement. In the alternative, they claim that if the plaintiff's use did give rise to a prescriptive easement, then the court improperly determined the scope of the easement. We affirm the judgment of the trial court.

The court reasonably could have found the following facts. In 1948, Frank Genovese and Marguerite Genovese (Genovese) owned real property located at 170 and 172 White Street in Danbury. On May 4, 1948, Genovese sold 170 White Street to Walter Werner and Charlotte Werner (Werner). In the deed of conveyance from Genovese to Werner, Genovese reserved a right to use a portion of 170 White Street for purposes of egress from and ingress to 172 White Street. The deed did not convey any portion or any right to use any portion of 172 White Street to Werner. Hoffman Fuel Company of Danbury (Hoffman) is a successor in interest to Werner.

The driveway on 170 White Street is located on the east side of 170 White Street and adjacent to the 172 White Street property line. The driveway is the sole means of ingress to and egress from Hoffman's fuel depot, which is located on 170 White Street. Hoffman has used its driveway on 170 White Street continuously since at least 1955 for regular private vehicular traffic, including trucks, vans, delivery trucks and tractor-trailers. When the vehicles used the driveway, they encroached on a portion of 172 White Street as if it were part of the driveway.

In 1970, Genovese leased 172 White Street to the Sizzlebord restaurant. Thereafter, on April 5, 1971, Sizzlebord subleased to Hoffman a portion of 172 White Street, including a garage and parking area, located at the rear of the property. On October 30, 1975, Michael J. Elliott and Callie A. Elliott, trustee of the Callie A.

Elliott Family Trust (Elliott), purchased 172 White Street from Genovese. Hoffman continued to lease the rear portion of 172 White Street from the defendants until 1996.

By letter dated September 25, 1996, Elliott informed Hoffman that a survey of 172 White Street revealed pavement and fence encroachment by Hoffman along the northwest side of 172 White Street. Thereafter, Elliott began to erect a fence to prevent Hoffman from utilizing the disputed encroachment area.

Pursuant to its revised complaint filed June 24, 1998, Hoffman alleged that it had acquired a prescriptive easement over the encroachment area. By answer filed August 12, 1998, Elliott asserted a special defense, namely, that because Hoffman leased a portion of the defendant's property, the use of the encroachment area was permissive and thereby defeated any claim of an easement by prescription. On June 29, 2000, the matter was tried before the court. In its memorandum of decision filed November 7, 2000, the court concluded that Hoffman had established by a preponderance of the evidence that it had acquired an easement by prescription to use the driveway encroachment area located on 172 White Street. The court further ordered a permanent injunction preventing Elliott from interfering with that easement. This appeal followed. Additional facts will be provided as necessary.

I

The defendants first argue that the court improperly found that the use of the disputed driveway encroachment area was open, visible, continuous and uninterrupted, and under a claim of right so as to give rise to a prescriptive easement in favor of Hoffman. We disagree.

"Whether a right of way by prescription has been acquired presents primarily a question of fact for the

trier after the nature and character of the use and the surrounding circumstances have been considered." *Klein* v. *DeRosa*, 137 Conn. 586, 589, 79 A.2d 773 (1951). "When the factual basis of the court's decision is challenged, the reviewing court must determine whether the facts are supported by the evidence or whether they are clearly erroneous." *Faught* v. *Edgewood Corners, Inc.*, 63 Conn. App. 164, 168, 772 A.2d 1142, cert. denied, 256 Conn. 934, 776 A.2d 1150 (2001). "In such cases, the trier's determination of fact will be disturbed only in the clearest of circumstances, where its conclusion could not reasonably be reached." *Robert S. Weiss & Co.* v. *Mullins*, 196 Conn. 614, 619, 495 A.2d 1006 (1985).

As a preliminary matter, the defendants argue that the court's "conclusions as to the ultimate facts are inconsistent with the subordinate facts found, and, therefore, present a mixed question of law and fact, review of which is plenary." We are not persuaded. The defendants cite *Tooley* v. *Metro-North Commuter Railroad Co.*, 58 Conn. App. 485, 492 n.8, 755 A.2d 270 (2000), *Crandall* v. *Gould*, 46 Conn. App. 164, 698 A.2d 934 (1997), rev'd, 244 Conn. 583, 711 A.2d 682 (1998), and *Reynolds* v. *Soffer*, 190 Conn. 184, 188, 459 A.2d 1027 (1983), to support that proposition. Because *Tooley* involved exhaustion of administrative remedies in the context of a collective bargaining agreement, it is not relevant to our review of whether the elements of a prescriptive easement have been satisfied in a particular case. Furthermore, in both *Crandall* and *Reynolds*, whether the requirements for a prescriptive easement had been met was reviewed under a clearly erroneous standard. See *Crandall* v. *Gould*, supra, 167; *Reynolds* v. *Soffer*, supra, 188–89. We therefore review the court's findings to determine whether they were clearly erroneous.

To establish an easement by prescription in accordance with General Statutes § 47-37,[1] the plaintiff must prove the necessary elements by a preponderance of the evidence. See *Faught* v. *Edgewood Corners, Inc.*, supra, 63 Conn. App. 168. It is well settled that before a use may develop into a prescriptive easement, it must be (1) open and visible, (2) continuous and uninterrupted for fifteen years and (3) engaged in under a claim of right. Id. Because the defendants do not dispute that the use was continuous and uninterrupted for fifteen years, we limit our review to the remaining two elements.

## A

### Open and Visible

The defendants argue that the use of the disputed area was not "notorious" and, therefore, the open and visible element was not satisfied.[2] This argument is misplaced.

"To be open, a use must be without attempted concealment . . . . It must be so open, visible, and appar-

---

[1] General Statutes § 47-37 provides: "No person may acquire a right-of-way or any other easement from, in, upon or over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years."

[2] The defendants seem to confuse the "visible" element of a prescriptive easement with the "notorious" element of adverse possession. The two doctrines, however, require that different elements be proved. "A claim of prescriptive easement requires proof that the claimant's use of the property has been open, *visible*, continuous and uninterrupted for fifteen years under a claim of right. . . . A claim of title by adverse possession requires a claimant to prove that the owners have been ousted from possession from the property in dispute for an uninterrupted period of fifteen years under a claim of right by an open, *notorious* and exclusive possession." (Citations omitted; emphasis added; internal quotation marks omitted.) *Francis* v. *Hollauer*, 1 Conn. App. 693, 695–96, 475 A.2d 326 (1984). The defendants argue that the plaintiff has not proved the *notorious* element of a prescriptive easement. They have not, however, provided this court with any authority, and our research has revealed none, that requires a notorious, rather than visible, use to acquire a prescriptive easement.

ent that it gives the owner of the servient tenement knowledge and full opportunity to assert his rights. The circumstances of possession must be sufficient to put a prudent person upon inquiry." 25 Am. Jur. 2d, Easements and Licenses § 60 (1996). "It is for the party who seeks to establish an easement by user to exercise his claimed right so openly as to give the owner knowledge and full opportunity to assert his own rights." *Exley* v. *Gallivan*, 96 Conn. 676, 679, 115 A. 482 (1921). "[T]he defendants' actual knowledge of the existence of the right-of-way is not a necessary element of the plaintiff's proof." *Robert S. Weiss & Co.* v. *Mullins*, supra, 196 Conn. 619.

The defendants argue that the use of the encroachment area could not satisfy this element of a prescriptive easement because they did not know about the use until 1996. The court, however, found that the defendants had a survey prepared, dated October 6, 1975, which shows Hoffman's encroachment on the 172 White Street property. In addition, the court found that Hoffman had paved, repaired, plowed and repaved the area. Hoffman also painted the surface of the disputed area to establish a no parking zone.

We conclude that Hoffman's use of the encroachment area and the survey prepared by the defendants were sufficient to give the defendants knowledge and full opportunity to assert their rights. The court's finding that Hoffman established the "open and visible" element of a prescriptive easement was not clearly erroneous.

B

Claim of Right

The defendants further argue that Hoffman has not proved, as a matter of law, that its use of the encroachment area was under a claim of right rather than permis-

sive. Specifically, they claim that the use could not be under a claim of right because the encroachment area was either (1) part of a shared driveway for which the deed provided or (2) included in the sublease with Sizzlebord. We disagree.

"A use made under a claim of right is a use made without recognition of the rights of the owner of the servient tenement. . . . The use must occur without license or permission and must be unaccompanied by a recognition of [the right of the owner of the servient tenement] to stop such use. . . . The claim of right requirement serves to ensure that permissive uses will not ripen into easements by prescription by requiring that the disputed use be adverse to the rights of the owner of the servient tenement. . . . Whether the requirements for [a claim of] right have been met in a particular case presents a question of fact for the trier of facts. . . . The trier's determination of facts will be disturbed only when those findings are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Faught* v. *Edgewood Corners, Inc.*, supra, 63 Conn. App. 170.

1

Deed

The defendants first claim that the language in the deed demonstrates that the disputed area was a part of a shared driveway and, therefore, the use was permissive. We disagree.

To address the defendants' claim, we must first look at the deed to determine whether the easement reserved by Genovese was intended to convey an easement over 172 White Street to Werner. "To determine the nature of an easement created by deed, we must discern the intention of the parties to the deed by considering the language of the deed, the situation of the property and

the surrounding circumstances. . . . We give the language of the easement its ordinary import where nothing in the situation or surrounding circumstances indicates a contrary intent. . . . The meaning and effect of the reservation are to be determined, not by the actual intent of the parties, but by the intent expressed in the deed, considering all its relevant provisions and reading it in the light of the surrounding circumstances . . . and its interpretation present[s] a question of law. . . . In the construction of a deed or grant, the language is to be construed in connection with, and in reference to, the nature and condition of the subject matter of the grant at the time the instrument is executed, and the obvious purpose the parties had in view." (Citations omitted; internal quotation marks omitted.) *Ezikovich* v. *Linden*, 30 Conn. App. 1, 5–6, 618 A.2d 570, cert. denied, 225 Conn. 913, 623 A.2d 1023 (1993).

A review of the deed reveals that Genovese reserved a right to use the driveway located on 170 White Street, jointly with the Werners, for access to the personal residence located on 172 White Street.[3] In addition, the

[3] The relevant language in the Werner deed is as follows:

"The Grantors [Genovese] reserve the right, privilege and easement during their joint lives (and during the life of the survivor of them), unless they shall sooner convey to any third person or persons their adjoining home premises, to use jointly with the Grantees [Werner], their heirs, executors, administrators and assigns, the driveway located on the Easterly part of the premises hereby conveyed for a distance of fifty (50) feet Southerly from the Southerly line of White Street and the exclusive right to use the driveway extending for the remaining distance in a Southerly direction, as it is shown and designated upon the map hereinbefore referred to, which driveway shall be kept by the Grantees herein, their heirs and assigns, substantially fifteen (15) feet in width throughout its entire length.

\* \* \*

"The Grantees, their heirs and assigns, by the acceptance hereof, hereby convenants and agree that the rights reserved by the Grantors in the driveway hereinbefore referred to shall enure to the benefit of all invitees and licensees and members of the family of the Grantors and that in the event the Grantors, or the survivor of them, shall cease to use said premises for a home or office purposes the rights reserved in said passway shall thereupon terminate, and

circular driveway used by Genovese at the time of the conveyance to Werner, as depicted on a map of the property on file in the city clerk's office, was located on both 170 and 172 White Street. The reservation was, therefore, necessary for Genovese to continue using the driveway. There is no language in the deed purporting to convey any interest in 172 White Street to Werner.[4] After considering the relevant portions of the deed and in light of the surrounding circumstances, we conclude that the deed did not permit Hoffman, either expressly or impliedly, to use any portion of 172 White Street.

## 2

### Lease

The defendants further claim that because Hoffman leased a portion of 172 White Street, the use of the encroachment area was permissive. Specifically, they argue that because the leased property was landlocked, permission to use the encroachment area was implicit in the lease. The defendants' argument is misplaced.

In essence, the defendants argue that an easement by implication arose for the benefit of the landlocked leased property. Because permission is implicit in the context of a landlocked parcel, they argue that the use of the encroachment area was necessarily permissive. This argument, however, assumes that a prescriptive easement is one that can be implied.

"An implied easement is typically found when land in one ownership is divided into separately owned parts

the land hereby conveyed shall be free of any easement in favor of said homestead promises. . . ."

[4] Even if we assume arguendo that the deed did create a common driveway to be used by both Werner and Genovese, the defendants' argument still fails because (1) the "homestead" purpose of the easement ceased once the restaurant was built and (2) the easement terminated when Genovese conveyed the property to Elliott. On the basis of the defendants' argument, any permissive use implicit in the deed would have ceased no later than October 30, 1975.

by a conveyance, and at the time of the conveyance a permanent servitude exists as to one part of the property in favor of another which servitude is reasonably necessary for the fair enjoyment of the latter property. . . . In the absence of common ownership . . . an easement by implication may arise based on the actions of adjoining property owners. . . . There are two principal factors to be examined in determining whether an easement by implication has arisen: (1) the intention of the parties; and (2) whether the easement is reasonably necessary for the use and normal enjoyment of the dominant estate." (Internal quotation marks omitted.) *O'Brien* v. *Coburn*, 39 Conn. App. 143, 148, 664 A.2d 312 (1995).

The following additional facts are relevant to this claim. In 1971, Sizzlebord subleased the rear portion of 172 White Street, containing a garage and parking area, to Hoffman. A fence ran between the two properties and continued around the subleased area enclosing all of the property in which Hoffman had an interest. The court found that Hoffman "has extensively used its driveway, including the disputed parcel, as its only means of ingress to and egress from its property for trucks which transport fuel oil to the fuel depot on Hoffman's property [170 White Street] and from the Hoffman's depot to residential and business customers."

The defendants argue that the map, the purpose of the lease and the lack of all other access to the landlocked subleased area evidence that if there is an easement, it is by implication, and, therefore, its use must be permissive as a matter of law. They further argue that the use of the encroachment area was not appurtenant to 170 White Street, but rather that it was appurtenant to the leased property. The defendants' argument disregards the fact that Hoffman owned the adjacent property. The encroachment area was used as the sole means

of ingress to and egress from 170 White Street. Any benefit to the leased property on 172 White Street was incidental and, therefore, we cannot conclude that the encroachment area was reasonably necessary to the beneficial use and enjoyment of the leased property.

Because Hoffman did not have permission to use the encroachment area and it did so without recognition of Elliott's rights to stop such use, we conclude that the court's finding that Hoffman's use of the encroachment area was made under a claim of right was not clearly erroneous. Accordingly, the court properly concluded that Hoffman obtained a prescriptive easement over the encroachment area.

II

The defendants argue that if this court determines that the court properly determined that Hoffman held a prescriptive easement over their property, the scope of the easement was too broad. We disagree.

"The determination of the scope of a prescriptive easement is a question of fact. . . . [W]hen an easement is established by prescription, the common and ordinary use which establishes the right also limits and qualifies it. . . . The use of an easement must be reasonable and as little burdensome to the servient estate as the nature of the easement and the purpose will permit. . . . An owner of an easement has all rights incident or necessary to its proper enjoyment of the easement. . . . [O]ne who has an easement by prescription has the right to do such acts that are reasonable and necessary to effectuate that party's enjoyment of the easement unless it unreasonably increases the burden on the servient tenement." (Citations omitted; internal quotation marks omitted.) *McCullough* v. *Waterfront Park Assn., Inc.*, 32 Conn. App. 746, 755–56, 630 A.2d 1372, cert. denied, 227 Conn. 933, 632 A.2d 707 (1993).

The court enjoined the defendants from "continuing to close, barricade, fence off, obstruct, or otherwise interfere with the foregoing easement and from in any manner interfering with or attempting to prevent [the plaintiff], its invitees, licensees, successors and assigns from passing over or using the said easement." The court found that Hoffman used the encroachment area for ingress and egress and, in addition, maintained the area for its use. After reviewing the evidence in the record, we conclude that the scope of the easement as provided by the court is not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.