PATRICK J. MCMANUS ET AL. *v.* LINDA D. ROGGI
(AC 21035)

Lavery, C. J., and West and Stoughton, Js.

---

Argued March 31—officially released July 29, 2003

*Mark W. Dietz*, for the appellant (defendant).

*Dwight D. Weed,* for the appellees (plaintiffs).

*Opinion*

LAVERY, C. J. The defendant, Linda D. Roggi, appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiffs, Patrick J. McManus and Kathleen M. McManus. On appeal, the defendant claims that the court improperly found that (1) the plaintiffs had obtained a prescriptive easement over the paved area located between the houses of the parties, (2) the paved area was a part of Owens Lane in Glastonbury, (3) the plaintiffs did not abandon a portion of the existing express right-of-way, (4) the defendant was estopped from denying the plaintiffs the right to cross a portion of an earthen dam and bridge located on the defendant's property, and (5) the defendant was not entitled to nominal damages for the plaintiffs' trespass. We affirm in part and reverse in part the judgment of the trial court.

The court found the following facts. The plaintiffs and the defendant own adjoining pieces of property in Glastonbury. The defendant acquired title to property known as 79 Owens Lane by warranty deed, dated March 29, 1994, from Jose R. Lujambio and Katherine Lujambio. The Lujambios had obtained title to the property from Walter J. Traskos and Frances M. Traskos.

The plaintiffs own property known as 80 Owens Lane. The plaintiffs obtained title to that property on December 9, 1994, by a warranty deed from Harriet Beech. Beech had obtained title to the property on May 15, 1979, from Clifford W. Wood and Judith Ann Wood.[1] The Woods took title by a warranty deed dated June 10, 1968, in fee simple. On November 5, 1968, the Woods

---

[1] Clifford Wood testified that he had obtained the property from his wife's parents, Walter Traskos and Frances Traskos, and that the town would not grant a building permit to construct the house at 80 Owens Lane without the easement.

obtained an easement and a right-of-way, by means of a quitclaim deed, from the Traskoses. Additionally, the Woods received, on May 15, 1979, a warranty deed from Walter Traskos that included a twenty foot right-of-way.[2] That right-of-way was for the purpose of ingress and egress from Owens Lane to the plaintiffs' property.

Owens Lane connects the properties with Hebron Avenue and is approximately two-tenths of a mile long. Owens Lane[3] intersects the north border of the defendant's property. At the beginning of that intersection is a paved area[4] between the parties' homes, part of which is the location of the twenty foot right-of-way.

After the plaintiffs moved into their residence in early 1995, the parties enjoyed a friendly relationship. Kathleen McManus rented a horse stall in the defendant's barn. Furthermore, the plaintiffs requested and obtained permission from the defendant to expand a dam and bridge further onto the defendant's property.

In 1998, the relationship between the parties began to deteriorate. The defendant took in additional horse boarders and, in a letter dated March 1, 1999, terminated the boarding agreement with Kathleen McManus and requested that she remove all of her personal property as of April 1, 1999. In a letter dated March 15, 1999, the defendant informed Patrick McManus of several instances in which she claimed that he had acted in an inappropriate manner, including accusations of sexual

---

[2] The right-of-way is approximately 215 feet long and twenty feet wide.

[3] Pursuant to article III, § 17-32, of the Glastonbury Code of Ordinances, Owens Lane is a private road approved for maintenance to be performed by the department of public works. Such maintenance includes snow plowing and ice sanding, sweeping, surface patching, oiling and incidental sanding, and the installation and maintenance of any official traffic control device or street sign that is approved. Glastonbury Code of Ordinances, art. III, § 17-33. Additional surfaces may be provided in the interest of public safety. Id.

[4] The paved area is thirty-two feet wide at the start of the defendant's property and expands to thirty-seven feet.

harassment. In August, 1999, the defendant filed a police report, claiming that Kathleen McManus had trespassed on her land for ten to fifteen minutes.

In June, 1999, the defendant began to complain about the plaintiffs' use of the paved area. Previously, she had never attempted to restrict the plaintiffs' use of the paved area to the twenty foot right-of-way. The defendant began to obstruct the plaintiffs' use of the paved area by installing fencing and leaving parked vehicles to prevent use outside of the twenty foot right-of-way. As a result of those actions, delivery vehicles stopped service to the plaintiffs, and the town ceased plowing the area.

On September 13, 1999, the plaintiffs initiated an action by serving a five count complaint on the defendant. The plaintiffs sought to obtain an injunction prohibiting the defendant from interfering with their prescriptive easement that included the entire paved area. The defendant responded by filing an answer, special defenses and a four count counterclaim.[5] The court issued a memorandum of decision on April 14, 2000, which addressed only the plaintiffs' application for an injunction. The court granted the plaintiffs "full and unfettered use of all the paved area in question, including but not limited to town of Glastonbury maintenance and plowing, and the use by vehicles making deliveries and any necessary parking to unload same." In a memorandum of decision issued on June 21, 2000, the court adopted all of its previous factual findings and legal conclusions, rendered a permanent injunction and awarded the plaintiffs $200 in damages. Further-

---

[5] The first count of the counterclaim sounded in trespass. Count two alleged that the plaintiffs, in modifying the dam, created a nuisance on the defendant's property. Counts three and four alleged intentional and negligent infliction of emotional distress, respectively, on the basis of the conduct of Patrick McManus.

more, with respect to the defendant's counterclaim, the court rendered judgment for the plaintiffs.

The defendant timely filed a motion for articulation, requesting that the court (1) define the scope of the plaintiffs' easement, (2) determine whether the paved area located between parties' houses was a part of Owens Lane and (3) explain the nature of the damages award. The court granted the motion and issued its articulation. The court stated that the easement was a right-of-way for travel and that the previous memorandum of decision had set forth the scope of the easement, the paved portion located between the homes was a part of the town road and that damages were awarded for the unnecessary interference with the plaintiffs' use of their rights. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly found that the plaintiffs had obtained a prescriptive easement[6] over the paved area between the homes of the parties. Specifically, the defendant argues that the plaintiff failed to provide evidence that the use of the easement was continuous and uninterrupted under a claim of right. We disagree.

---

[6] "An easement is a property right in a person or group of persons to use the land of another for a special purpose *not inconsistent with the general property right in the owner of the land.* . . . J. Cribbet, Property Law (1962), p. 16. . . . An easement is always distinct from the right to occupy and enjoy the land itself. *It gives no title to the land on which it is imposed* . . . .

"An easement is neither an estate in land nor the land itself. It is, however, property or an interest in land. Thus, an easement is real property. It is an incorporeal right or hereditament to which property is rendered subject. . . . 25 Am. Jur. 2d 570–71, Easements and Licenses § 2 (1996). This court has implicitly recognized that a property owner retains an interest in fee regardless of the fact that the property is burdened by an easement." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Kelley v. Tomas,* 66 Conn. App. 146, 153, 783 A.2d 1226 (2001).

At the outset, we set forth the legal principles and standard of review necessary for the resolution of the defendant's appeal. We begin our analysis of the issue by setting forth the requirements for establishing a prescriptive easement. General Statutes § 47-37 concerns the acquisition of easements by adverse use or prescription. Section 47-37 provides: "No person may acquire a right-of-way or any other easement from, in, upon or over the land of another, by the adverse use or enjoyment thereof, unless the use has been continued uninterrupted for fifteen years." "In applying that section, this court repeatedly has explained that [a] party claiming to have acquired an easement by prescription must demonstrate that the use [of the property] has been open, visible, continuous and uninterrupted for fifteen years and made under a claim of right." (Internal quotation marks omitted.) *Waterbury* v. *Washington*, 260 Conn. 506, 576–77, 800 A.2d 1102 (2002).

"Whether a right of way by prescription has been acquired presents primarily a question of fact for the trier after the nature and character of the use and the surrounding circumstances have been considered. . . . When the factual basis of the court's decision is challenged, the reviewing court must determine whether the facts are supported by the evidence or whether they are clearly erroneous. . . . In such cases, the trier's determination of fact will be disturbed only in the clearest of circumstances, where its conclusion could not reasonably be reached." (Citations omitted; internal quotation marks omitted.) *Hoffman Fuel Co. of Danbury* v. *Elliott*, 68 Conn. App. 272, 275–76, 789 A.2d 1149, cert. denied, 260 Conn. 918, 797 A.2d 514 (2002).

Finally, we note that although the court found clear and convincing evidence of a prescriptive easement in favor of the plaintiff, such a high evidentiary hurdle is

not required.[7] Our Supreme Court has stated that "with respect to a claim to a prescriptive easement, [a]ll that is required is a showing by a fair preponderance of the evidence that the use was adverse." (Internal quotation marks omitted.) *Schulz* v. *Syvertsen*, 219 Conn. 81, 91, 591 A.2d 804 (1991); see also *Hoffman Fuel Co. of Danbury* v. *Elliott*, supra, 68 Conn. App. 277. With the foregoing principles in mind, we now address the merits of the defendant's argument.

## A

The defendant argues that the plaintiffs failed to offer evidence of a continuous and uninterrupted use under a claim of right for the necessary fifteen year period. Specifically, the defendant claims that Kathleen McManus testified that she believed that she could use the entire paved area; however, the plaintiffs lived at the property only since 1994. Clifford Wood, who owned the property until 1979, testified that he believed he could use the entire area. Harriet Beech, however, the owner from 1979 until 1994, did not testify. Thus, the defendant argues that there was no evidence that Beech had used the entire area without permission, express or implied, from either the defendant or her predecessors in title for the required time period.

"A use made under a claim of right is a use made without recognition of the rights of the owner of the servient tenement. . . . The use must occur without license or permission and must be unaccompanied by a recognition of [the right of the owner of the servient tenement] to stop such use." (Internal quotation marks omitted.) *Hoffman Fuel Co. of Danbury* v. *Elliott*,

---

[7] The court improperly stated that the plaintiffs were required to prove the elements of a prescriptive easement under the clear and convincing standard. As authority, it cited the case of *Barrs* v. *Zukowski*, 148 Conn. 158, 165–66, 169 A.2d 23 (1961). *Barrs*, an adverse possession case, does not apply to the facts of the present case.

supra, 68 Conn. App. 279. "The claim of right requirement serves to ensure that permissive uses will not ripen into easements by prescription by requiring that the disputed use be adverse to the rights of the owner of the servient tenement. 4 R. Powell, Real Property (1997) § 34-10, pp. 34-111 through 34-133." (Internal quotation marks omitted.) *Kelley* v. *Tomas,* 66 Conn. App. 146, 159, 783 A.2d 1226 (2001).

In *Lisiewski* v. *Seidel,* 72 Conn. App. 861, 806 A.2d 1121, cert. denied, 262 Conn. 921, 922, 812 A.2d 865 (2002), we stated that it "was not . . . the plaintiff's burden to establish that his use of the property was without permission. Such a rule would often charge a party with proving a negative. Rather, it was the plaintiff's burden to establish that his use of the property was under a claim of right. . . . This is not to say, however, that evidence indicating a lack of permission is irrelevant to whether the plaintiff has established use under a claim of right." (Citation omitted.) Id., 873.

Kathleen McManus testified that she never asked for permission to use the paved area. John Casella, who lived on the adjacent property for more than sixty years, testified that there was never any intention to limit access to the paved area to 80 Owens Lane. Furthermore, he stated that the Beeches made total use of the area, as did the plaintiffs. Clifford Wood, a previous owner of the plaintiffs' property, also testified that he was familiar with the history of those pieces of property and that there was never any restriction on the type of vehicles that could use the paved area. He also stated that he had never asked for or received permission to use the area.

On the basis of the foregoing, we are not left with the firm impression that the court's finding was clearly erroneous. We have considered the character of the use of the paved area, as well as the surrounding circum-

stances; see id., 874; and conclude that it was not clearly erroneous for the court to conclude that the plaintiffs were entitled to a prescriptive easement.

B

The defendant also argues that the court's finding that the paved area is part of Owens Lane is inconsistent with the finding of a prescriptive easement. Specifically, the defendant claims that a private right-of-way cannot be acquired by prescription over land subject to use as a public highway. At the outset, we reiterate that according to the town code of ordinances, Owens Lane is a private road subject to maintenance provided by the town. Furthermore, there was no evidence that members of the public used Owens Lane or the paved area on a regular basis. At oral argument, the defendant conceded that only the plaintiffs, the defendant and the defendant's tenants used Owens Lane on a regular basis.

In *Gioielli* v. *Mallard Cove Condominium Assn., Inc.*, 37 Conn. App. 822, 658 A.2d 134 (1995), we stated: "Where the use of a right-of-way is in common with the public, the common use is considered to negate a presumption of grant to any individual use. In such a case, the individual user must, in order to establish an independent prescriptive right, perform some act of which the servient owner is aware and which clearly indicates his individual claim of right. . . . Whether the requirements for such a right have been met in a particular case presents a question for the trier of facts after the nature and character of the use and the surrounding circumstances have been considered. . . . A finding that the use made by the claimant and his predecessors in title was not different from that made by the general public is fatal to the establishment of any prescriptive right in the claimant." (Citation omitted; internal quotation marks omitted.) Id., 829–30.

In the present case, there was evidence that the plaintiffs had used the paved area in a manner different and distinct from that of the general public; the paved area was used for ingress and egress to the properties, and primarily was used only by the plaintiffs, the defendant and the tenants who lived on the defendant's property. That use was not in common with that of the public. The court's finding that the paved area was part of Owens Lane is not inconsistent with the finding of a prescriptive easement in favor of the plaintiffs.

## II

The defendant next claims that the court improperly found that the paved area was a part of Owens Lane. The defendant has failed, however, to provide us with any analysis of why that finding, if improper, is relevant to the appeal. Thus, it is unclear as to how the defendant is aggrieved by that challenged finding. Our Supreme Court has stated: "[P]roof of aggrievement is . . . an essential prerequisite to the court's jurisdiction . . . . [T]he party claiming aggrievement must successfully establish that the *specific personal and legal interest has been specially and injuriously affected by the decision.*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Seymour* v. *Seymour*, 262 Conn. 107, 110, 809 A.2d 1114 (2002). In the present case, however, the defendant failed to establish why the finding, if improper, has caused her injury. We will, therefore, not review that claim.

## III

The defendant next claims that the court improperly found that the plaintiffs had not abandoned a portion of the express right-of-way. Specifically, the defendant argues that the right-of-way, at some point, was extended in the deeds beyond the paved area and that neither the plaintiffs nor their predecessors have uti-

lized the right-of-way beyond the paved area. We are not persuaded.

"Whether there has been an abandonment is a question of intention to be determined from all the surrounding circumstances, and is a question of fact and not of law. The proof must clearly indicate that it was the intention of the owner of the dominant estate to abandon the easement. . . . [Abandonment] implies a voluntary and intentional renunciation, but the intent may be inferred as a fact from the surrounding circumstances. . . . Although, before legal abandonment can be found, there must be proof of an intent to abandon . . . that requirement can be met without resort to proof of specific intent. Most frequently, where abandonment has been held established, there has been found present some affirmative act indicative of an intention to abandon . . . but nonuser, as of an easement, or other negative or passive conduct may be sufficient to signify the requisite intention and justify a conclusion of abandonment. The weight and effect of such conduct depends not only upon its duration but also upon its character and the accompanying circumstances." (Citations omitted; internal quotation marks omitted.) *Friedman* v. *Westport*, 50 Conn. App. 209, 212–13, 717 A.2d 797, cert. denied, 247 Conn. 937, 722 A.2d 1216 (1998). Our Supreme Court has stated that there must be clear proof of intent to abandon an easement. *Byard* v. *Hoelscher*, 112 Conn. 5, 16, 151 A. 351 (1930); *Richardson* v. *Tumbridge*, 111 Conn. 90, 93, 149 A. 241 (1930); *Stueck* v. *G. C. Murphy Co.*, 107 Conn. 656, 662, 142 A. 301 (1928).

The defendant points out that Kathleen McManus testified that she did not use the portion of the right-of-way south of the paved area. Furthermore, the predecessors to the plaintiffs' title did not use that area. The defendant also notes that the plaintiffs have never complained about the oil tank, stone wall, deck or

bushes located in that area that would interfere with the right-of-way.

In its initial memorandum of decision, filed April 14, 2000, the court expressly found that the there was no abandonment.[8] In the subsequent memorandum of decision, dated June 21, 2000, the court stated that it had adopted all of its factual findings and legal conclusions from the April 14, 2000 decision.[9] The defendant filed a motion for articulation; however, she never requested that the court articulate the reasons that it found that the plaintiffs had not abandoned any portion of the easement.

We have stated that "[i]t is incumbent upon the appellant to take the necessary steps to sustain its burden of providing an adequate record for appellate review. Practice Book § 4061 [now § 60-5]; *Walton v. New Hartford*, 223 Conn. 155, [164–65], 612 A.2d 1153 (1992). Indeed, several rules of practice aim to facilitate the process by which an appealing party ensures the adequacy of the record. See Practice Book § 4051 [now § 66-5] (Rectification of Appeal, Articulation), § 4053 [now § 66-6] (Motion for Review—In General), § 4054 [now § 66-7] (Motion for Review—Review of Motion for Rectification of Appeal or Articulation). These rules foster the basic policy that an appellate tribunal cannot render a decision without first fully understanding the disposition being appealed. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court . . . any decision made by us respecting [the defendant's claims] would be entirely

---

[8] "The court cannot find at this time that the plaintiffs have abandoned any part of their rights in the easement, their rights in the paved area or their use of Owens Lane as extended."

[9] "The court now adopts all of its findings of fact and legal rulings to apply to the request for a permanent injunction."

speculative." (Citations omitted; internal quotation marks omitted.) *Gladstone, Schwartz, Baroff & Blum* v. *Hovhannissian*, 53 Conn. App. 122, 127, 728 A.2d 1140 (1999).

The defendant states that the court, during the hearing on the motion for articulation noted that it might have made a mistake with respect to the issue of abandonment of the right-of-way beyond the paved area. The court stated that "the lack of use would seem to indicate [abandonment] . . . ." The defendant filed a motion to correct the possible error. The court, however, in its articulation, did not address the issue of abandonment. The court also never acted on the defendant's motion to correct. The defendant subsequently failed to file a motion for review of the articulation. See Practice Book § 66-7.[10]

Despite the comments made during the hearing, we are thus left with the factual finding that the plaintiffs did not abandon any part of the right-of-way. The burden was on the defendant to prove abandonment because she alleged it as a special defense. On appeal, the burden was on the defendant to provide this court with a complete factual record. The defendant failed to do so.

## IV

The defendant next claims that the court improperly found that she was estopped from denying the plaintiffs the right to cross a portion of the bridge located on her property. Specifically, the defendant argues that the renovations to the bridge, located on top of the dam,

[10] Practice Book § 66-7 provides in relevant part: "Any party aggrieved by the action of the trial judge as regards . . . articulation under Section 66-5 may, within ten days of the issuance of notice of the order sought to be reviewed, make a written motion for review to the [appellate] court, to be filed with the appellate clerk, and the court may, upon such a motion, direct any action it deems proper. . . ."

substantially encroached on her property and that she never granted the plaintiffs the right to travel across her property. We disagree.

"The defense of estoppel must be supported by proof of two essential elements: (1) the party against whom estoppel is claimed must be shown to have done or said something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and (2) the other party must be shown to have changed its position in reliance on those facts, thereby incurring some injury. . . . An estoppel is predicated on proof of misleading conduct resulting in prejudice to the other party. . . . The party claiming estoppel has the burden of proof, and whether it has met that burden of proof in a particular case is an issue of fact. . . . We therefore review the court's finding under the clearly erroneous standard." (Citation omitted; internal quotation marks omitted.) *Ridgefield* v. *Eppoliti Realty Co.*, 71 Conn. App. 321, 337, 801 A.2d 902, cert. denied, 261 Conn. 933, 806 A.2d 1070 (2002).

In the present case, the plaintiffs informed the defendant that they wanted to rebuild the dam and bridge. Their plan indicated that the new bridge would encroach on the defendant's property, and the defendant consented to that proposal.[11] The plaintiffs bore the entire cost of the construction. The defendant never voiced any objection to the construction or encroachment onto her land. All the parties used the bridge on a regular basis for a period of time.

On June 13, 1999, the defendant placed wooden stakes on the property line as it crossed the bridge and prevented the plaintiffs from driving vehicles across the bridge. Those stakes were replaced by a fence, making use of the bridge difficult for the plaintiffs.

---

[11] The defendant had an express easement providing her ingress and egress over the bridge.

The court found that the defendant was estopped from preventing the plaintiffs from crossing the bridge. The court noted that the defendant consented to the renovation of the bridge and dam, observed the layout and construction, and failed to object or to complain about the plaintiffs' use of the bridge until the relationship between the parties deteriorated. Moreover, Kathleen McManus testified that if the defendant had objected to the encroachment onto her property, the bridge and dam could have been constructed entirely on the plaintiffs' property.

There was evidence before the court that the plaintiffs relied on the conduct and statements of the defendant with respect to the construction of the bridge and dam. Furthermore, there was evidence that the plaintiffs, on the basis of the statements and conduct of the defendant, had changed their position as to where to build the improved bridge and dam. We conclude, therefore, that it was not clearly erroneous for the court to find that the defendant was estopped from preventing the plaintiffs from using the bridge.

V

Finally, the defendant claims that the court improperly failed to award damages for the trespass committed by the plaintiffs. Although we agree that the defendant was entitled to judgment and nominal damages for the admitted trespass, we adhere to the general rule that we will not grant a new trial for the failure to award such damages.

The defendant set up a videocamera surveillance system and no trespassing signs. On August 28, 1999, Kathleen McManus was recorded on the tape as being on the defendant's property. The defendant filed a police report and, during the investigation, Kathleen McManus provided a one sentence affidavit admitting that she was on the defendant's property. Patrick McManus also

testified that he had driven on the defendant's driveway without permission. Despite that evidence, the court found no injury and declined to award damages.

In *Melfi* v. *Danbury*, 70 Conn. App. 679, 800 A.2d 582, cert. denied, 261 Conn. 922, 806 A.2d 1061 (2002), we addressed the issue of the failure to award nominal damages. "It was improper for the [trial] court to fail to award damages to the plaintiffs. Because liability already had been conclusively established . . . the plaintiffs, at the very least, were entitled to nominal damages. Although technically incorrect, the failure to award damages does not require a remand. [N]o purpose would be furthered by a remand because the damages to be awarded to the plaintiff against the defendants could only be nominal based upon the substantive findings of the trial court . . . . We will not ordinarily remand a case for the mere failure to award nominal damages." (Citation omitted; internal quotation marks omitted.) Id., 691–92; see also *Rubin* v. *Rios*, 186 Conn. 754, 756, 443 A.2d 1273 (1982). Although appellate courts ordinarily will not remand a case for the failure to award nominal damages, they have not hesitated in such circumstances simply to direct the trial court to render judgment for the prevailing party for $1 in nominal damages. See, e.g., *Expressway Associates II* v. *Friendly Ice Cream Corp. of Connecticut*, 218 Conn. 474, 479, 590 A.2d 431 (1991); *Kelly* v. *Ivler*, 187 Conn. 31, 39, 450 A.2d 817 (1982); *Macklin* v. *Macklin*, 186 Conn. 185, 191, 439 A.2d 1086 (1982).

The judgment is reversed only as to the counterclaim alleging trespass and the case is remanded with direction to render judgment in favor of the defendant and to award nominal damages with respect to the trespass claim. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.